UNITED STATES of America, Plaintiff-Appellee,

v.

Elliot LASKY, Defendant-Appellant.

Nos. 75–2860, 76–2425.

United States Court of Appeals, Ninth Circuit.

Jan. 5, 1977.

Rehearings Denied March 8 and March 11, 1977.

**836**

Philip Scott Ryan, San Francisco, Cal., for defendant-appellant.

Bruce R. Castetter, Asst. U.S. Atty., on the brief, Terry J. Knoepp, U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, Chief Judge, LAY,[*] Circuit Judge, and WATERS,[**] District Judge.

[*] The Honorable Donald P. Lay, United States Circuit Judge, Eighth Circuit, sitting by designation.

[**] The Honorable Laughlin E. Waters, United States District Judge, Central District of California, sitting by designation.

PER CURIAM:

Elliot Lasky appeals his conviction for importing and conspiracy to import cocaine in violation of 21 U.S.C. §§ 952, 960 and 963. After a mistrial was declared because of a hung jury, Lasky was retried and convicted on both counts. He was sentenced to two concurrent seven-year terms with a ten-year special parole term. Lasky filed this appeal, and subsequently moved for a new trial on the ground of newly discovered evidence. This court remanded the case to the district court, the Honorable William E. Enright, to review the new evidence. After a hearing Judge Enright declined to entertain the motion for new trial, and the defendant appealed that ruling. Since both appeals present the same fundamental issue, they have been consolidated.

■■■ The basic issue on appeal is the defendant's contention that the government suppressed information about a government witness which was favorable to the defense in violation of the principles announced in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v.*

*United States*, 405 U.S. 150, 92 S.Ct. 463, 31 L.Ed.2d 104 (1972).[1]

### I.

The conspiracy charged in the indictment encompassed a time period from September 1971 to December 1971. The government's case established that the 1971 conspiracy was a joint effort between Lasky and Sam Mangiameli. The evidence showed that Lasky supplied part of the financing and a list of cocaine contacts in Colombia, South America. Beyond supplying the list of contacts and the financial support, Lasky played no physical part in the purchase and importation of the cocaine. The government's proof proceeded on the theory that Lasky employed Thomas Saytes as his agent. Lasky gave Saytes the purchase money and the list of contacts. Saytes then met Mangiameli and his wife, Claudia, in Colombia where they purchased the cocaine from a source on Lasky's list. The cocaine was then fitted on the bodies of Susan Chase and Claudia Mangiameli (nee Edman), who then flew to Tijuana, Mexico.

1. The defendant has raised several other issues. Although we do not discuss them in detail, we have thoroughly examined them and found no merit to them. The defendant's additional claims of error were on the following grounds:

(1) He was absent from an *in camera* inquiry concerning an alleged prejudicial communication with a juror. Although defendant was not present, the record discloses that no prejudicial communication took place. The record also discloses that it was the government who moved to excuse the juror and that the defendant's counsel opposed the government's motion. Since there was no prejudice, the defendants' absence from these proceedings was, at best, harmless error. *See United States v. Doe*, 513 F.2d 709, 710 n. 1 (1st Cir. 1975); *United States v. Reynolds*, 489 F.2d 4, 8 (6th Cir. 1973); and *United States v. Larkin*, 417 F.2d 617, 618–19 (1st Cir. 1969). We similarly reject for lack of prejudice defendant's claim that he was entitled to be present at the evidentiary *in camera* proceeding held pursuant to Fed.R. Crim.P. 16(d)(1).

(2) There was no criminal prohibition against importing or conspiracy to import cocaine during the period charged in the indictment, because the schedules of controlled substances were not republished in compliance with 21 U.S.C. § 812. This claim lacks

merit. *See United States v. Infelice*, 506 F.2d 1358 (7th Cir. 1974); and *United States v. Nocar*, 497 F.2d 719 (7th Cir. 1974).

(3) His decision to testify on direct examination concerning subsequent similar acts was the result of compulsion, rather than a strategic trial decision. The record and case law refute this claim. *See Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976); *United States v. Murray*, 492 F.2d 178, 197 (9th Cir. 1973); and *Shorter v. United States*, 412 F.2d 428, 431 (9th Cir. 1969). *See also Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 2244 n. 7, 49 L.Ed.2d 91 (1976); *Id.* at 2249–50 n. 8 (Stevens, J., dissenting); *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); and *Fitzpatrick v. United States*, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900).

(4) The admission into evidence of similar acts was prejudicial error. We disagree. This evidence was clearly admissible to show the defendant's intent and state of mind. There was no prejudice to a fair trial. In addition the district court instructed the jury not to consider this evidence unless other evidence, standing alone, established the defendant's guilt beyond a reasonable doubt. *See United States v. Marshall*, 526 F.2d 1349, 1361 (9th Cir. 1975); and *United States v. Lewis*, 423 F.2d 457, 459 (8th Cir. 1970).

In Tijuana the cocaine was packed in the spare tire of Susan Chase's automobile which was driven across the border by Ken Boston. At the border the car was searched and the cocaine discovered. According to the government's evidence, that same day in response to Saytes' telephone call, Lasky came to Sam Mangiameli's house in Los Angeles to discuss the arrest with Saytes, Sam and Claudia Mangiameli and Helen Smith.

The government's principal witnesses were Thomas Saytes and Helen Smith. Lasky had met with Claudia Mangiameli in Helen Smith's apartment to discuss importing Colombian cocaine, and Smith was present at the Los Angeles meeting.

Tom Saytes testified about his arrangement with Lasky to be Lasky's agent, i. e., that Lasky gave him the list of Colombia cocaine contacts and the purchase money. Saytes also testified about the purchase and importation of the cocaine, and the Los Angeles meeting.

The government also presented evidence of three subsequent similar transactions involving Lasky. A January 1972 transaction was related only by Tom Saytes. On this occasion Lasky personally made the arrangements for the couriers. After Lasky gave him the money, Saytes testified, he flew to Colombia, made the purchase and supplied the cocaine to the couriers.

The May 1972 transaction involved Lasky, Saytes and Helen Smith. Lasky provided the financing, Saytes made the purchase, and Smith was the courier. Smith was arrested at a New York airport, and subsequently all three pleaded guilty and were convicted.

The third similar transaction occurred in December 1972. David Stutler testified that he flew what he believed to be a trial cocaine run to Mexico for Fred Chase. Later, at a dinner party, he discovered it was not a "dry" run but a "successful" run. Stutler also testified that at the dinner party Lasky gave Fred Chase an envelope from which Chase later paid Stutler for piloting the aircraft.

Lasky admitted his involvement in the May 1972 transaction, but denied any involvement in the January 1972 or December 1972 transactions. In his own defense Lasky testified that he met with Claudia Mangiameli to purchase cocaine for personal use and not to discuss importing cocaine. He asserted that he was not involved in the conspiracy and that Saytes was acting independently and not as his agent. Lasky testified that the names he gave Saytes were social contacts. He explained his attendance at the Los Angeles meeting as a response to a friend's (Saytes) plea for help.

The other defense witnesses' testimony supported Lasky's and undermined Saytes' credibility. They testified that Saytes' reputation for truth and veracity was poor, that he was a heroin addict, and that Saytes had a misunderstanding with Lasky because of Claudia Mangiameli's comment that Lasky considered Saytes "a mere lackey." They testified that when confronted by Saytes, Lasky denied making the statement and accused Claudia of a fabrication. Saytes testified that the statement upset him as it was Lasky's plan to portray him as Lasky's partner so that Saytes could have some influence over Sam Mangiameli.

## II.

The defendant claims error in the trial proceedings on the ground that the government suppressed information about David Stutler, a government witness, which prevented the defense from adequately cross-examining him. The suppressed evidence reveals, the defendant asserts, that Stutler committed perjury, was deeply involved in the importation of illegal drugs and was testifying in return for the government's promises of nonprosecution and sentence modification. The defendant asserts that the suppression of this evidence denied him the right to a fair trial guaranteed by the due process clause of the Fifth Amendment.

David Stutler was not called as a witness at the first trial, but was called as a government witness in the second trial. He testified about the December 1972 "trial run" incident and the dinner party at which La-

sky gave Fred Chase an envelope from which Chase later paid Stutler for piloting the aircraft. Stutler also testified that he was serving a prison sentence for importing cocaine. On cross-examination Lasky's attorney questioned Stutler about his arrest and conviction:

Q. And the trial in which Mr. Coffin asked you about was a trial where you attempted to smuggle twenty-two and a half pounds of cocaine into the United States. Is that right?

A. That's right.

Q. And you were arrested in—on an island near Colombia. Is that right?

A. Yes, that is right.

Q. And as a result of that arrest and the cocaine that was found in your airplane, you went to trial here in San Diego. Is that right?

A. Yes.

Q. How many other trips have you made besides that one?

A. The one that I am presently incarcerated on?

Q. Yes.

A. The one in question here, in 1972.

Q. So you only made two trips?

A. Yes.

■ The Assistant United States Attorney knew at the time of Stutler's testimony that Stutler had made two trips to import marijuana in addition to the two cocaine trips. The government brought this information to the attention of the court and Lasky's attorney *after* the jury had retired. The defendant complained that the government had knowingly used perjured testimony, but the district court found that the questions were vague and equivocal and that taken in context, "Stutler could, in all

truth and honesty, answer the questions the way he did." We agree.

As an additional basis for error the defendant contends that the government suppressed information about David Stutler despite discovery requests for the information. The record demonstrates that the defendant's discovery requests did not give "the prosecutor notice of exactly what the defense desired." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342 (1976). Before the first trial Lasky's counsel requested all probation reports, presentence interviews and reports for 14 individuals including David Stutler. Subsequently Lasky's counsel requested all *"Brady* material" and *"Giglio* material."[2] In seeking this information the defendant was not willing to rely on the government's judgment and requested that the government's complete file be produced for examination by the court and defense counsel.

■ Such a general request places the government in no better position than if no request had been made. With broad requests any duty to respond "must derive from the obviously exculpatory character of the certain evidence in the hands of the prosecutor." *United States v. Agurs, supra,* 96 S.Ct. at 2399. Therefore the proper standard of materiality is whether the "omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 2401. Although cognizant of the admonition that in certain circumstances additional evidence of relatively minor importance might be sufficient to create a reasonable doubt, we find that in the context of the entire record, the additional evidence affecting David Stutler's credibility does not create a reasonable doubt.[3]

---

**2.** Lasky's February 11, 1975, motion requested:

Order requiring delivery to the defendant of all evidence favorable to him under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, including all information regarding police records, arrests, convictions, and any deals, promises or communications with Government witnesses regarding benefits they may receive, or have already received, for testifying against de-

fendant, pursuant to *Giglio v. U. S.,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104.

In support of this motion the defendant filed a memorandum which states his discovery request in greater detail, but the request could still be accurately characterized as requesting "all *Brady* and *Giglio* material."

**3.** In *Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976), the Fifth Circuit limited the materiality standard of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), to

David Stutler was not a participant in the 1971 conspiracy. His testimony did not directly link Lasky with the 1971 conspiracy, nor did his testimony corroborate any testimony linking Lasky with the 1971 conspiracy. Stutler testified only about the envelope incident at the December 1972 dinner party. This testimony was admitted only for the purpose of demonstrating Lasky's intent and knowledge. More importantly, the district court instructed the jury not to consider this testimony unless the other evidence, standing alone, established the defendant's guilt beyond a reasonable doubt. Our review of the record reveals that the other testimony, standing alone, clearly and convincingly established the defendant's guilt. Thus any further evidence [4] affecting David Stutler's credibility would not create a reasonable doubt that did not otherwise exist.

The judgment of conviction is affirmed.

evidence concerning a substantive issue, and held that when the nondisclosed evidence concerns the credibility of a witness a new trial will be granted only if the defendant demonstrates that the evidence probably would have resulted in an acquittal. Since we find that the defendant has failed to satisfy the materiality standard of *United States v. Agurs*, we need not consider the propriety of a higher standard for impeachment evidence.

4. The defense was able to attack Stutler's credibility by showing his convictions for importing cocaine and that his sentence was still subject to modification and that a United States Attorney might make a favorable recommendation.