UNITED STATES of America, Appellee,

v.

Arthur J. STRAHL, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Joseph V. PUZZANGARA, Defendant, Appellant.

Nos. 77–1424, 77–1425.

United States Court of Appeals, First Circuit.

Argued Sept. 7, 1978.

Decided Dec. 26, 1978.

Certiorari Denied Feb. 21, 1979. See 99 S.Ct. 1237.

---

Joseph J. Balliro, Boston, Mass., with whom Mark G. Miliotis, Melrose, Mass., was on brief, for appellant Arthur Strahl.

Harvey Brower, Lawrence, Mass., appearing for appellant Joseph Puzzangara.

Kevin J. O'Dea, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, KUNZIG,* Judge, Court of Claims, DUMBAULD,** Senior District Judge.

COFFIN, Chief Judge.

Appellant Strahl appeals from his conviction of possession of a $5,000 United States Treasury note stolen from the United States mails, of counterfeiting and conspiring to counterfeit approximately $700,000 worth of $5,000 Treasury notes, and of possessing, concealing, and attempting to pass the counterfeited notes, 18 U.S.C. §§ 371, 471, 472, 1708. He was sentenced, after a jury trial, to four years imprisonment on the conspiracy count, with sentences of the same duration on the other charges to run concurrently. Appellant Puzzangara, a codefendant of Strahl at trial, was found guilty of possession of the stolen note and the conspiracy charge and sentenced to five years imprisonment and a consecutive five year suspended sentence with probation. Both appeal from the judgments of conviction, challenging the admissibility of certain

* Sitting by designation.

** Of the Western District of Pennsylvania, sitting by designation.

evidence at trial and the government's failure to produce several "statements", allegedly in violation of the Jencks Act, 18 U.S.C. § 3500.

1. *The attorney-client privilege*

■ At trial the government called as a witness one Markella, an attorney of Strahl over a number of years. Over defense attorneys' repeated objections, Markella was allowed to identify Strahl as the man who had given him, in partial payments for legal fees or debts owed, the stolen Treasury note in question.[1] Appellant argues that although the identity of the client and payment of fees generally are not within the attorney-client privilege (which protects confidential *communications*), *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977); *In re Grand Jury Proceedings*, 517 F.2d 666, 670–71 & n. 2 (5th Cir. 1975), the facts of this case remove it from the general rule.

Beginning with the often cited case of *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), courts have recognized an exception to this general rule when "the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source." *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962). *See In re Grand Jury Proceedings, supra*, 517 F.2d at 671–72; *NLRB v. Harvey*, 349 F.2d 900, 905 (4th Cir. 1965). In *Baird* in IRS summons sought disclosure of the identity of the clients on whose behalf the attorney had made an anonymous tax payment, 279 F.2d at 625. The court held that the attorney need not disclose the identity of his clients, citing the particular facts of the case, *id.* at 631.

We find the *Baird* case distinguishable from this one. In *Baird*, "disclosure of [the identity] of the client would [have] implicate[d] that client in the very criminal activity for which legal advice was sought."

1. This issue concerns only Strahl's appeal since there was no evidence of any attorney-client relationship between Markella and Puzzangara.

*United States v. Hodge and Zweig, supra,*
548 F.2d at 1353. There is no indication,
either in the briefs or the record, that ap-
pellant Strahl went to Markella for legal
advice concerning his counterfeiting activi-
ties and disclosed confidential information
to him. The testimony at trial indicates
that the stolen Treasury note was passed to
Markella as payment for past legal fees
which had accumulated or to satisfy an
unrelated debt.

We can find no furtherance of the poli-
cies behind the attorney-client privilege, *see*
*United States v. Fisher,* 425 U.S. 391, 403,
96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United
States v. Osborn,* 561 F.2d 1334, 1339 (9th
Cir. 1977), that would result from shielding
the payment of an attorney with stolen
goods—a fraudulent act as well as a conve-
nient means of unloading highly incrimina-
ting evidence, possession of which was itself
a crime, 18 U.S.C. § 1708. Accordingly we
hold that the attorney-client privilege was
not violated when Markella testified that
Strahl was the person who passed the stolen
note to him.

**2.** *The relevance of seized counterfeited
notes*

■ Appellants contend that the trial
court erred in admitting into evidence testi-
mony by a Secret Service agent and records
showing that approximately 140 counterfeit
$5,000 United States Treasury notes had
been seized in Florida and Maryland, that
they had been produced from the genuine
note that had been passed from Strahl to
Markella, and that before the seizure of
these same notes, no other counterfeit
$5,000 notes had come to the attention of
the Secret Service. At trial and on appeal,
appellants contested the relevance of the
seized counterfeit notes, Fed.R.Evid. 401,
402, 403.

Wide discretion as to the relevancy of
evidence is vested in the trial judge, both as
to its probative value and its prejudicial
impact. *United States v. DeVincent,* 546
F.2d 452, 457 (1st Cir. 1976); *United States
v. Cowden,* 545 F.2d 257, 268 (1st Cir. 1976),
and we cannot say that that discretion was

in any way abused here. It is clear without
further elaboration that the existence of
these counterfeited notes and testimony
linking them to appellants constituted "evi-
dence having any tendency to make the
existence of any fact that is of consequence
to the determination of the action more
probable . . . than it would be with-
out the evidence." Fed.R.Evid. 401.

**3.** *Competency of government witness*

■ Appellant Strahl also argues that
the testimony of witness Curran, a key par-
ticipant in the counterfeiting scheme who
testified for the government, should have
been struck as incredible and not worthy of
jury consideration. Specifically, he claims
that the witness's memory ebbed and faded,
his demeanor was argumentative, and that
he drank heavily at the time of critical
events about which he testified.

The district judge enjoys considerable dis-
cretion in determining the competency of
witnesses. *See* Fed.R.Evid. 104(a); *United
States v. Gerry,* 515 F.2d 130, 137 (2d Cir.),
*cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46
L.Ed.2d 50 (1975); *United States v. Crosby,*
149 U.S.App.D.C. 306, 462 F.2d 1201, 1202
(1972). Moreover, we believe that the ap-
pellants' objections were suitably treated as
questions concerning the credibility of the
witness rather than his competency. The
jury was made aware of Curran's drinking
problems, his prior criminal history, his in-
volvement in the counterfeiting scheme and
the government favors he received for his
cooperation. His credibility as a witness
was for the jury to determine, as the dis-
trict court properly ruled. *See United
States v. Curtis,* 520 F.2d 1300, 1304 (1st
Cir. 1975).

**4.** *Delay in providing testimony received
by grand jury*

■ At trial, appellants moved for a mis-
trial or dismissal for the government's al-
leged failure to timely produce exculpatory
material. We find that the district court
properly denied these motions.

The testimony in question was that of
government witness Curran before the

grand jury, in particular a statement by Curran that he believed, although he did not "remember how he learned", that government witness Lombardo was the cameraman on counterfeit checks that Curran had done for appellant Strahl on a previous occasion. The government furnished the defense with this information after Curran testified. Appellants contend that it should have been furnished at an earlier point in the trial, after Lombardo testified and claim both that this delay deprived them of due process, *see United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that it violated the timetable of the Jencks Act, 18 U.S.C. § 3500.

In *United States v. Agurs, supra,* the Supreme Court held that the prosecutor's obligation to disclose evidence in his possession that would be material to the defense arises in three contexts—when the prosecution has used perjured testimony, when the defense has made a specific request for evidence, and when the defense has made either a general request or no request for exculpatory evidence. 427 U.S. at 103, 96 S.Ct. 2392. Because a general request was made by appellants, only the third context is relevant here, in which the standard for materiality is a stringent one: "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. . . ."

We note first that Curran's grand jury testimony was useful, if at all,[2] only for impeaching Lombardo. We are not faced with a situation, as in *Agurs,* in which the withheld evidence may have been exculpatory, and the circuit courts have expressed uncertainty about applying *Agurs* to purely impeaching evidence. *See United States v. McCrane,* 547 F.2d 204, 205–06 (3d Cir. 1976); *Garrison v. Maggio,* 540 F.2d 1271, 1273–74 (5th Cir. 1976), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977); *United States v. Lasky,* 548 F.2d 835, 839 n. 3 (9th Cir. 1977). We need not

reach that question here, however, because it is clear that the grand jury testimony of Curran falls considerably short of the standard of materiality demanded by *Agurs,* even if it is applicable. This is not a case in which the evidence of guilt was tenuous, and Lombardo's participation in this counterfeiting scheme was known to the jury. We cannot say that impeachment of Lombardo with this hearsay and rather vague grand jury testimony concerning his past activities would have raised a reasonable doubt in the jury's mind. *See United States v. Oliver,* 570 F.2d 397, 401–02 (1st Cir. 1978).

Moreover, Curran's testimony was turned over to the defense at trial, albeit after Lombardo had already been cross-examined. As the district judge pointed out to the defense at trial, any possible prejudice easily could have been cured by cross-examining Curran or by recalling Lombardo after Curran testified, *see United States v. Kaplan,* 554 F.2d 577, 580 (3d Cir. 1977), and failure to pursue either route belies the defense claim concerning the exculpatory importance of the testimony. We find that there was no due process violation occasioned by the delay.

We are unpersuaded as well by the appellant's Jencks Act argument, 18 U.S.C. § 3500. Section 3500(a) of the Act provides that "In any criminal prosecution . . . no statement or report in the possession of the United States which was made by a Government witness . . . to an agent of the Government shall be subject to subpoena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case.*" (Emphasis added.) The statement in question was that of Curran, and the government produced it at trial, after his testimony, in a timely fashion. The fact that Curran mentioned Lombardo does not mean that the Act's requirements were triggered by Lombardo's testimony.

---

**2.** Lombardo's testimony was that he had met Curran only socially, "probably", but never in connection with any counterfeiting activity. The contradiction between this and Curran's belief that Lombardo had been involved as a cameraman does not impress us as formidable impeachment material.

### 5. *Denial of defense request for witness' "statement"*

Appellants' most serious grievance, we believe, is the manner in which the court below denied their request for a "statement", 18 U.S.C. § 3500(e), made by government witness Lombardo to the Assistant United States Attorney. This request also was made pursuant to the Jencks Act, 18 U.S.C. § 3500.

The district court, after a defense motion to produce the material, held a bench conference during which the government attorney assured the judge that the personal notes he had made when interviewing Lombardo in preparation for his grand jury testimony were not a "statement" within the meaning of the Jencks Act.[3] The motion was denied, renewed again when additional information about the interview was elicited from Lombardo during cross-examination, and denied once again.

We are not without guidance in determining the meaning of the term "statement" or the procedures by which that determination is to be made by the trial court. In *Goldberg v. United States,* 425 U.S. 94, 98, 96 S.Ct. 1338, 1343, 47 L.Ed.2d 603 (1976), the Supreme Court held that if a writing prepared by a government lawyer has been signed or otherwise adopted or approved by the government witness, it is producible under the Jencks Act. It "is not rendered nonproducible because a Government lawyer interviews the witness and writes the 'statement.' " *Id.* In a footnote, the *Goldberg* Court explained that every witness interview will involve conversations between the lawyer and witness, but the § 3500(e)(1) requirement that the witness has "signed or otherwise adopted or approved" what the lawyer has written

"clearly is not met when the lawyer does not read back or the witness does not read, what the lawyer has written." *Id.* at 110, n. 19, 96 S.Ct. at 1348.

The task of the district court, then, was to decide whether Lombardo had signed or, in some other way, adopted or approved the interview notes made by the government attorney. This determination is of course one of fact and will not be disturbed on appeal unless it was "clearly erroneous." *See Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) (*Campbell II*); *United States v. Carrillo,* 561 F.2d 1125, 1128–29 (5th Cir. 1977). But we are troubled by the procedures used by the court in reaching its conclusion. In *Campbell v. United States,* 365 U.S. 85, 95, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961) (*Campbell I*), the Court noted that an inquiry into the existence of a Jencks Act "statement" was not an adversary proceeding, but read the Act as imposing a duty on the trial judge to "secure relevant and available evidence necessary" to resolve the conflicting interests at stake. Finding the inquiry in that case defective, the Court remanded for further proceedings. When the case reached the Court again in *Campbell II, supra,* it adopted this court's holding that in a Jencks Act inquiry into the existence of a "statement", the trial judge must consider not only the testimony of the interviewing attorney but the witness as well, 373 U.S. at 494, 83 S.Ct. 1356. *See Campbell v. United States,* 296 F.2d 527, 534 (1st Cir. 1961), *vacated and remanded,* 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).[4]

 The district court's first denial of the defense motion to produce Lombardo's "statement" was based solely on the

---

**3.** 18 U.S.C. § 3500 reads in relevant part:

"(e) The term 'statement,' as used in . . . this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an

agent of the Government and recorded contemporaneously with the making of such oral statement."

**4.** The Supreme Court reversed that part of our decision finding that the report in question was not a Jencks Act "statement" and held that the question was one of fact, not to be disturbed on appeal unless "clearly erroneous". *Campbell v. United States,* 373 U.S. 487, 491–93, 83 S.Ct. 1356 (1963) (*Campbell II*).

government attorney's assurances at the bench.[5] Had the issue been dropped there, we would be compelled to remand for a more thorough hearing. We believe, however, that the cross-examination of Lombardo by the defense elicited enough—although barely enough—information to form a basis for the judge's decision, when the motion was again denied, that Lombardo had not adopted or approved the interview notes. Nevertheless, it must be emphasized that the inquiry was only minimally adequate. The court played no role in eliciting Lombardo's testimony and made no attempt to clarify the witness's rather vague responses. The interests protected by the Jencks Act would be better served by a more active participation by the court than occurred here.

Based on the government attorney's assurances that he merely had made interview notes and that there had been no signature, adoption or approval by the witness, coupled with Lombardo's testimony that the attorney only "went over it with me", we cannot say that the court's decision that the interview notes were not a Jencks Act "statement" was clearly erroneous. We have concluded, therefore, that the case should not be remanded. Our conclusion is reinforced by the strong evidence of guilt in this case gathered from sources other than Lombardo, the fact that the defense had another "statement" of Lombardo's with which to impeach that witness, and the extensive impeachment of Lombardo on cross-examination.

*Accordingly, the judgments below are affirmed.*

**5.** The government attorney's opinion at the bench that his notes were privileged work product and thus not producible under the Jencks Act was clearly without merit in light of *Goldberg v. United States*, 425 U.S. 94, 108, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), in which the Court specifically rejected a blanket work product exception to the Act. The district court's conclusion that the interview notes were not a "statement" satisfies us that the defense motion was not denied because of the work product doctrine.