**In re GRAND JURY SUBPOENA (Robert M. LEEN).**

No. 85–1.

United States District Court, S.D. Florida.

July 17, 1986.

Jeffrey S. Weiner, Michael J. Rosen, Miami, Fla., for petitioner.

Thomas A. O'Malley, Asst. U.S. Atty., Miami, Fla., for respondent.

## ORDER DENYING MOTION TO QUASH GRAND JURY SUBPOENA AND COMPELLING APPEARANCE OF WITNESS

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Witness, Robert M. Leen's Motion to Quash Grand Jury Subpoena and the Government's response thereto, and the Court having considered same, the *amicus curiae* memorandum submitted by the National Association of Criminal Defense Lawyers, oral argument heard by this Court on Monday, July 14, 1986, the applicable law, the pertinent parts of the record, and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that that Witness, Robert M. Leen's Motion to Quash Grand Jury Subpoena be, and the same hereby is, DENIED. The Government's response to the Witness' Motion shall be construed as a Motion to Compel Appearance before the Grand Jury, and, as such, the Motion is hereby, GRANTED, and the Witness shall appear before the Grand Jury within 15 (fifteen) days from the date of oral argument; that is, on or before Tuesday, July 29, 1986.

At a hearing held by this Court in this matter, the Parties declined the opportunity to present evidence and instead stipulated in open court to certain facts. In short, on October 28, 1983, the Witness, attorney Robert M. Leen, through his secretary, deposited $5000.00 of client fees into a bank account. It was later discovered that said deposit contained twenty-five counterfeit fifty dollar bills. Thereafter, on December 8, 1983, Robert M. Leen made another deposit of client fees into said bank account in the amount of $2500.00. This deposit included eighteen counterfeit fifty dollar bills. The Witness has represented that these funds came from at least two separate clients and refuses to provide information as to the identity of the individuals who supplied the subject counterfeit bills, citing the attorney-client privilege.

After carefully reviewing the pertinent law, this Court concludes that the identities of the individuals who supplied the subject counterfeit bills cannot be protected by the attorney client privilege. Before fully discussing this matter, however, it should be noted that the primary focus of the Witness' Motion and memorandum of law concerned the Witness' argument that the Third Circuit Court of Appeals' *Schofield* doctrine ought to apply in this context before the witness could be compelled to testify. *See In re Grand Jury Proceedings*, 486 F.2d 85 (Schofield I) (3rd Cir. 1973); *In re Grand Jury Proceedings*, 507 F.2d 963 (Schofield II) (3rd Cir.1975), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The Witness did not, however, argue this point at oral argument

232.

and seemed to concede that this doctrine has been squarely rejected in this Circuit. *See, e.g., In re Grand Jury Subpoena (Slaughter),* 694 F.2d 1258 (11th Cir.1982). In any event, it is clearly the case that *Schofield* is not viable in this Circuit, and as such, the Witness' arguments in this regard must fail.

As to the privilege claim itself, any analysis in this area must commence with the general proposition that client identity and fee information are not generally protected by the attorney-client privilege. *See, e.g., In re Grand Jury Investigation (Harvey),* 769 F.2d 1485, 1487 (11th Cir. 1985). Nonetheless, in *In re Grand Jury Proceedings (Jones),* 517 F.2d 666 (5th Cir. 1975), the former Fifth Circuit, relying to a considerable extent on the analysis set forth in *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960), first set forth the "narrow exception to this rule ... when disclosure of the client's identity by his attorney would supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *In re Grand Jury Proceedings (Twist),* 689 F.2d 1351, 1352–53 (11th Cir.1982). The Witness' basic argument herein is that he fits within this narrow exception to the general rule. In this present context, however, this Court cannot agree.

■ The Witness seems to contend that his clients' payment of attorney fees with counterfeit currency is somehow a confidential communication with his attorney warranting the protection of the attorney-client privilege, even where, as here, the clients' payment in counterfeit currency had nothing whatever to do with the reason why legal advice was sought. As a threshold matter this argument should be viewed in the light of the fundamental principle that "the party invoking the privilege has the burden of establishing the existence of the attorney-client relationship and the confidential nature of the communication." *In re Grand Jury Proceedings (Freeman),* 708 F.2d 1571, 1575 (11th Cir.1983), *citing United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.) *cert. denied* 439 U.S. 829, 99 S.Ct.

105, 58 L.Ed.2d 123 (1978). Here, even if this Court were to view the "last link" doctrine first set forth in this Circuit by *Jones, supra,* 517 F.2d at 666, in the broad manner suggested by the Witness, this Court would nonetheless point to the Witness' contention at oral argument, in the context of rebutting the Government's suggestion that the crime/fraud exception to the attorney-client privilege applied herein, that it is exceedingly likely that the individuals who supplied the currency to the attorney were simply innocently transferring what turned out to be counterfeit currency. To this extent, the Witness himself appears to have questioned whether or not revealing the identities of the subject individuals would constitute a "last link" of incriminating evidence, and as such, the application of the doctrine in this case appears questionable.

Additionally, this Court likewise questions the Witness' broad construction of the "last link" doctrine. To be sure, there is some broad language used in various cases in describing said doctrine, which, at first blush, would appear to lend some plausibility to the Witness' construction. Yet, this language cannot be read out of context or in a vacuum as the Witness would apparently suggest. The seminal case in this area, *Jones, supra,* 517 F.2d at 666 repeatedly emphasized the peculiar facts therein and stated categorically, "Each of these cases must turn on its own facts." *Id.* at 675. As noted, later opinions tend to contain language suggesting, without qualification, that the "last link" doctrine would apply where disclosure of a client's identity and fee arrangements would supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment. *See, e.g., In re Grand Jury Proceedings (Twist), supra,* 689 F.2d at 1352–53; *In re Grand Jury Investigation (Harvey), supra,* 769 F.2d at 1487. Yet, it must be noted, that despite this language, these cases did not hold that the subject exception to the general rule of no privilege applied; indeed in each of these cases the narrow exception to the general rule was held not to apply. In one

of the few cases to contain analysis of this issue, *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199 (5th Cir. Unit A 1981), the Court explicitly explored the implications of the subject language. Noting that the attorney-client privilege should be confined within the narrowest limits consistent with its purpose, the Court wrote: "If a legitimate legal relationship is an evidentiary lead to a subsequent, unrelated criminal activity, no substantial interest of society is served by protecting the name of the client and fee arrangement involved in the legitimate activity. If the legal relationship is illegitimate because it related to subsequent criminal activity, there is even less reason to protect the name of the client." *Id.* at 204.

The *Fine* Court went on to conclude that "The client's name and fee arrangements become privileged communications only if disclosure would implicate the client in the very criminal activity for which criminal advice is sought." (citations omitted). So too, in *In re Grand Jury Proceedings (Freeman), supra,* 708 F.2d at 1571, the District Court below had likewise concluded that "the identity and fee arrangements of each client was not privileged unless it could be shown that such matters would implicate the client in the very criminal activity for which legal advice was sought." *Id.* at 1573–74. The Court of Appeals although affirming on slightly different grounds, did not question the lower Court's construction of the last link doctrine. *See also In re Grand Jury Subpoena (Bierman),* 765 F.2d 1014 (11th Cir. 1985), on petition for rehearing, 788 F.2d 1511 (11th Cir.1986) (On rehearing, the Court vacated a portion of the opinion which included the cited broad language in describing the last link doctrine).

■ Alternatively, and additionally, this Court concludes that the last link doctrine cannot be used as a means of shielding potentially illegal activity, especially where the attorney/witness is a witness to a possible crime separate and apart from his representation of a client. This is especially the case, where as here, the client need necessarily have anticipated that the attorney would deposit the money in a bank account or exchange it for property or services from third persons. Nor would it be untoward to conclude that the attorney herein was a victim/witness to the criminal uttering of counterfeit bills. To suggest that this doctrine, under any view, can be appropriately used to permit an attorney not to reveal the source of counterfeit funds in this context, cannot, in the view of this Court, be reconciled with the narrow, fact-specific exception to the general rule set forth in *Jones* and its progeny. The wise and sound principles underlying the attorney-client privilege simply cannot permit a client to pay his attorney with counterfeit bills, in a matter unrelated to the reason why legal advice was sought in the first place and then avoid having his or her identity revealed. *Cf. United States v. Strahl,* 590 F.2d 10, 12 (1st Cir.1978), *cert. denied* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). ("We can find no furtherance of the policies behind the attorney-client privilege ... that would result from shielding the payment of an attorney with stolen goods—a fraudulent act as well as a convenient means of unloading highly incriminating evidence....")

For the foregoing reasons, the Witness' Motion to Quash the Grand Jury Subpoena is appropriately denied, and the Government's Motion to Compel Appearance is appropriately granted.