UNITED STATES of America

v.

**Edgardo BUITRAGO–DUGAND, Luis Eduardo Garcia–Donado, et al.**

**Crim. No. 88–0253 GG.**

United States District Court,
D. Puerto Rico.

April 18, 1989.

On Motion for Reconsideration
and/or Clarification May 15, 1989.

---

Guillermo Gil and Everett M. De Jesus, U.S. Dept. of Justice, Guaynabo, P.R., for U.S.

Jeffrey Williams, San Juan, P.R., for defendant Edgardo Buitrago–Dugand.

Antonio Cordova Gonzalez, San Juan, P.R., for defendant Luis Eduardo Garcia–Donado.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Defendants Edgardo Buitrago–Dugand (Buitrago) and Luis Eduardo García–Donado (García) are charged with illegally conspiring to import and distribute narcotics. Defendants moved to suppress statements or testimony of attorney Wilfredo Figueroa on the grounds that they were: 1) privileged under the attorney-client relationship; 2) fruits of the prosecution's violation of defendant's rights under the sixth amendment; and 3) unduly prejudicial under Rule 403 of the Federal Rules of Evidence. The matter was referred to the magistrate. On January 12, 1989 the magistrate issued a report recommending that the motion to suppress be denied. He was of the opinion that the fact of employment and the conditions of employment, including the amount of the fee, are not privileged. He was also of the opinion that defendant's sixth amendment rights were not violated because the information in question was not privileged. Likewise, he was of the opinion that the evidence was not inadmissible under Rule 403. Defendants filed an opposition in which they repeated the arguments made before the magistrate. The matter was set for an evidentiary hearing which was held on March 29, 1989 before the undersigned.

Since defendant has filed an opposition, a *de novo* determination is required. Section 636(b)(1)(C) provides that "[a] judge of the

district court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980). After careful examination of the record as a whole, we reach the following independent findings of fact and conclusions of law.

*Facts*

Defendants Buitrago and García were the pilot and co-pilot of an airplane that crash-landed in the early morning hours of June 9, 1988 at Philysburg Juliana Airport in St. Maarten, Netherlands Antilles. They were jailed in St. Maarten on charges of flying an aircraft without proper identification.

At the evidentiary hearing, attorney Wilfredo Figueroa testified that he was asked to go to St. Maarten to assist defendants shortly after their arrest by his then-client Rafael Tormes–Ortiz, who is also a co-defendant in this case. Prior to that time Figueroa had never met Buitrago or García. Soon thereafter, Figueroa went to St. Maarten, but was unable to see defendants because prison visits by foreign attorneys were prohibited unless the prisoners were represented by local counsel. As a result, Figueroa retained local counsel Alfred Richardson to represent defendants.

Figueroa returned to St. Maarten on June 16, 1989 at the request of co-defendant Tormes. After meeting with local counsel Richardson, Figueroa went to the jail at St. Maarten. He was accompanied by Edmundo Guzmán, who is also a defendant in this case. Figueroa spoke with Buitrago and García. They expressed their dissatisfaction with their representation by Richardson. Figueroa counseled caution in changing representation and discussed the pending charges against them. Defendants also discussed the events leading up to their crash-landing in St. Maarten, and candidly made incriminating remarks. Afterwards, Guzmán, who stood nearby during the conversation with Figueroa, spoke briefly with the defendants. Upon his return to Puerto Rico, Figueroa was paid for his services in St. Maarten by a relative of co-defendant Tormes.

Defendants were later arrested in Puerto Rico and charged with conspiring to traffick in narcotics. Attorney Figueroa met with them several times while they were detained in Puerto Rico. He discussed fee arrangements for their representation with the father of defendant Buitrago. Ultimately unable to agree on a fee arrangement, Figueroa ceased to provide his legal services to defendants.

During the course of the investigation for this case, one of the government attorneys, Guillermo Gil, approached Figueroa. Gil asked Figueroa who had hired him to visit Buitrago in St. Maarten. Gil told Figueroa that he might be subpoenaed before the grand jury to obtain this information. Figueroa told Gil that he reserved his right to argue that the information was privileged, and then told him that he had been hired to visit Buitrago by co-defendant Tormes. Shortly thereafter, attorney Figueroa withdrew from the case because he will be serving as a government witness. The government intends to call Figueroa in its conspiracy case against Buitrago and García to testify that he was sent to St. Maarten by co-defendant Tormes to assist them in getting legal representation and checking his condition, as well as to testify about the substance of their conversations in St. Maarten.

*The Attorney–Client Privilege*

Defendants argue that the testimony of attorney Figueroa must be suppressed because it would violate the attorney-client privilege. The government argues that their was no attorney-client relationship between defendants and attorney Figueroa and that therefore the attorney-client privilege does not apply.

The question is governed by federal common law,[1] which of course includes the

1. Rule 501 of the Federal Rules of Evidence provides: Except as otherwise provided by the

Constitution of the United States or provided by Act of Congress or in rules prescribed by the

attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In order to invoke the attorney-client privilege the claimant must establish:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.... 8 Wigmore, *Evidence* § 2292 (McNaughton Rev.1961)

*See United States v. Stern*, 511 F.2d 1364, 1367–68 (2d Cir.1975), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975).

The attorney-client privilege exists to encourage people to seek legal advice freely and to speak candidly to the attorney without fear that the communication will be disclosed. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed. 2d 39 (1976). In order to achieve this policy the privilege must attach soon after the prospective client has contacted an attorney, and not later than the point at which the person reveals facts tending to establish criminal exposure. *In re Grand Jury Proceedings (Pavlick)*, 663 F.2d 1057, 1060 (5th Cir.1981), *rev'd en banc on unrelated ground*, 680 F.2d 1026 (5th Cir.1982). As the court in *Pavlick* noted:

> The existence of the privilege cannot be limited to instances in which the attorney-client relationship comes to full fruition by the payment of legal fees and the performance of legal services. If that were required, a person would be compelled to retain the first attorney consulted in order to preserve the privilege. Such a requirement would ignore the reality that during early consultations the lawyer, the client or both may choose not to formalize or continue the relationship. The client may not be able to pay the fee; the attorney may discover some fact

which either obliges or persuades him not to accept employment; there may be a personality conflict, or either, for no articulable reason, may decide against formalizing the relationship.

*Id.; see also* L. Patterson & E. Cheatham, *The Profession of Law* 246, (citing *Taylor v. Sheldon*, 172 Ohio St. 118, 173 N.E.2d 892 (1961)).

Here, we find that an attorney-client relationship between attorney Figueroa and defendants Buitrago and García commenced with his visit with them in the St. Maarten jail. Figueroa represented himself as an attorney when he sought access to defendants in jail, he identified himself to them as an attorney, and he discussed legal matters with them, including their representation and the charges pending against them. Figueroa testified that be believed that the defendants talked to him as their attorney and confided in him pursuant to that understanding. His later visits to defendants in custody in Puerto Rico confirm that they had undertaken an attorney-client relationship, until the inability to agree upon legal fees led to a severing of the relationship.

*Attorney–Client Privilege and the Fee Payor's Identity*

■ The identity of the client and fee arrangements are generally not protected by the attorney-client privilege. *United States v. Strahl*, 590 F.2d 10, 11 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). Courts reason that the identity of a client and the receipt of fees are not normally matters of confidence or communications. *See United States v. Hodgson*, 492 F.2d 1175 (10th Cir.1974). Nevertheless, courts have recognized certain narrow exceptions to the general rule in which even the identity of the client, not merely his communications, must be shielded from inquiry. *In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 671 (5th Cir.1975).

---

Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law

as they may be interpreted by the courts of the United States in the light of reason and experience.

The exceptions to the general rule that fees and the identity of the client are not privileged [2] emanate from the noted case of *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960). *See Developments in the Law: Privileged Communications,* 98 Harv.L. Rev. 1450, 1519 (1985). In *Baird,* the Ninth Circuit held that an attorney did not have to disclose the identity of his clients on whose behalf the attorney had made an anonymous tax payments to the IRS. The court held that:

> The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgement of guilt on the part of such client of the very offenses on account of which the attorney was employed.

*Baird, supra,* 279 F.2d at 633.

■ The first major exception holds that information regarding fees and client identity is privileged when there is a strong probability that disclosure would implicate the client in the very matter for which the client originally sought legal advice. *See In re Grand Jury Proceedings (Twist),* 689 F.2d 1351, 1352 (11th Cir.1982); *In re Special Grand Jury No. 81-1 (Harvey),* 676 F.2d 1005, *vacated on other grounds,* 697 F.2d 112 (4th Cir.1982). This exception is characterized as the "legal advice" exception. *See In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447, 452 (6th Cir. 1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). The Fifth Circuit applies a narrower variation of the aforementioned exception, holding that fee or identity information is privileged if it provides the "last link" in a chain of incriminating evidence likely to lead to the client's indictment. *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026 (5th Cir.1982) (en banc).

■ The second major exception to the rule that fee and the identity of the fee payor are not privileged posits that: The privilege exists where disclosure of a client's identity or fee arrangements would connect the client to an already disclosed and independently privileged confidential communication. *See e.g., In re Shargel,* 742 F.2d 61 (2d Cir.1984); *United States v. Liebman,* 742 F.2d 807 (3d Cir.1984); *In re Witness Before the Special March 1980 Grand Jury,* 729 F.2d 489, 494 (7th Cir. 1984); *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d 493 (9th Cir.1986). Widely recognized, the "confidential communication" exception is narrower than the "legal advice" exception, and only applies where so much of the actual attorney-client communication had already been disclosed that identifying the client would amount to a full disclosure of the communication. *See Liebman, supra,* 742 F.2d at 809. In other words, the privilege applies where "the substance of a disclosure has already been revealed but not its source." *Colton v. United States,* 306 F.2d 633, 637 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

In *United States v. Strahl,* 590 F.2d 10, 11 (1st Cir.1978), our circuit court expressly recognized the "confidential communications" exception. Nevertheless, the court held that the privilege did not protect the identity of a client who had paid his attorney with stolen Treasury notes. *Id.* at 12. The court reasoned that the policies behind the attorney-client privilege would not be served by "shielding the payment of an attorney with stolen goods—a fraudulent act as well as a convenient means of unloading highly incriminating evidence, possession of which was itself a crime." *Id.*

The court also discussed the *Baird* case, noting that the privilege applied when "disclosure of [the identity] of the client would [have] implicate[d] that client in the very criminal activity for which legal advice was sought." *Id.* 590 F.2d at 11. The *Strahl* court found no indication that the client went to the attorney for legal advice concerning his illegal activities nor did he dis-

---

**2.** There is wide disparity among the federal circuit courts of appeals as to the recognition and extent of the exceptions to the fee payor identity rule. *Compare In re Grand Jury Subpoena Duc-* *es Tecum (Shargel),* 742 F.2d 61 (2d Cir.1984) *with In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026 (5th Cir.1982) (en banc).

close confidential information to him. *Id.* at 12. In applying the "legal advice" exception to the facts of *Strahl* it appears that the court implicitly adopted the "legal advice" exception, as well as expressly adopting the "confidential communications" exception. *Accord In re Grand Jury Proceedings (Doe)*, 602 F.Supp. 603, 607 (1985) (legal advice exception recognized in this circuit); *see also In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 452–54 (6th Cir.1983), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984) (adopting both legal advice and confidential communications exceptions).

■■■We find that the facts of the case before us bring it under the "legal advice" exception. Defendants received legal assistance from attorney Figueroa for legal difficulties arising out of the events leading up to, and including, their crash-landing on the island of St. Maarten. Disclosure of the fee arrangement would implicate defendants in the very criminal activity for which legal advice was sought. *See Strahl, supra,* 590 F.2d at 11 (quoting *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960)).

We are of the opinion that the attorney-client privilege should not be drawn so narrowly that abuses may occur. Requiring an attorney to become a witness against his client inevitably draws a wedge between attorney and client and, as happened in the instant action, may disqualify the attorney from representing the client in criminal proceedings. *See In re Special Grand Jury No. 81-1 (Harvey), supra,* 676 F.2d at 1009; *In re Grand Jury Matters,* 751 F.2d 13, 19 (1st Cir.1984).

The purpose of the attorney-client privilege—to encourage full and free disclosure by clients to their attorneys—supports this view. For in seeking legal advice from an attorney hired by a benefactor, the client is wittingly or unwittingly acknowledging a connection to the benefactor which, if known, would effectively destroy the client's ability to communicate with that attorney. Although we are not familiar with the practices in St. Maarten regarding the provision of counsel to the indigent, such disclosure could also effectively deprive that person of legal counsel, since it is possible that none would otherwise be made available.

■■ The government has not attempted to portray the relationship between defendants and attorney Figueroa as part of an agreement to furnish legal assistance that was part of a conspiracy. We are well aware that if such an agreement did exist the crime/fraud exception would deny the privilege to the identity of him who foots the bill, even if he were the client of the attorney and the attorney was unaware of the improper arrangement. *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1029 (5th Cir.1982) (en banc); *United States v. Hodge & Zweig,* 548 F.2d 1347 (9th Cir.1977). To invoke the exception successfully, the party seeking disclosure (here the government) must make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity. *Hodge & Zweig, supra,* 548 F.2d at 1354. Absent any evidence in support, we cannot conclude that the government has made its prima facie case.

*Waiver of the Attorney–Client Privilege*

■■ Finally, we must determine whether defendants' communications with attorney Figueroa in the presence of co-defendant Castillo Guzmán constitute a waiver of the privilege as to those communications. While attorney-client communication made in the presence of third parties generally destroys the privilege, it does so only insofar as it indicates the intent of the parties that their communication not be confidential. *United States v. Bigos,* 459 F.2d 639, 643 (1st Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972).

■■ There is no evidence before us proving that Castillo–Guzmán actually overheard the conversation between defendants and attorney Figueroa. The government has not suggested that Castillo–Guzmán will testify as to what he heard. As a result, we are not in a position to determine

whether the conversation was in fact overheard.

Moreover, the circumstances of the verbal exchange between defendants and attorney Figueroa in the jail at St. Maarten do not indicate defendants' intent that their communication not be confidential. First, the substance of their conversation, which was incriminating, suggests that it was intended to remain confidential. Second, defendants were not responsible for the presence of Castillo–Guzmán, who accompanied attorney Figueroa. In order to communicate with the attorney, defendants had no choice but to do so in the presence of a third party. As a result, we conclude that defendants intended their communication with attorney Figueroa to remain confidential and, therefore, we find no waiver of the attorney-client privilege.

In view of the foregoing, the Magistrate's Report and Recommendation of January 12, 1989 is hereby vacated and set aside. Defendants' motion to suppress is hereby GRANTED.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION AND/OR CLARIFICATION

On April 18, 1989, after an evidentiary hearing, we granted defendants Edgardo Buitrago–Dugand (Buitrago) and Luis Eduardo García–Donado's (García) motion to suppress certain statements or testimony of attorney Wilfredo Figueroa because they were protected under the attorney-client privilege. See supra. On April 28, 1989 the government filed a Motion for Reconsideration and/or Clarification. Defendants have filed an opposition. In the space below, we shall address the points raised by the government.

The government contends that defendants Buitrago and García do not have standing to claim the attorney-client privilege as to who asked attorney Figueroa to travel to St. Maarten and paid his expenses and fees since Buitrago and García had never met or been in contact with attorney Figueroa. We do not find that the crucial consideration in determining whether fee payor information is privileged is whether the fee payor approached the attorney before, rather than after, the attorney met with the clients/beneficiaries. In this circuit, once the party asserting the privilege has established the existence of the attorney-client relationship, client identity and fee payor information is privileged if the "person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate [the] client in the very criminal activity for which legal advice was sought." *United States v. Strahl*, 590 F.2d 10, 11 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979) (citing *United States v. Hodge & Zweig*, 548 F.2d 1347 (9th Cir.1977)); *In re Grand Jury Proceedings (Doe)*, 602 F.Supp. 603, 607 (D.R.I. 1985); *United States v. Pioggia*, Cr. No. 82–231–K, slip op. at 2 (D.Mass. Sept. 21, 1983). The "legal advice" exception, by its own terms, is not limited to situations in which fee paying arrangements are made *after* the onset of the attorney-client relationship.

The government contends that the only person with standing to assert the attorney-client privilege is the fee payor, co-defendant Rafael Tormes–Ortiz. We disagree. The fact that the fee payor, co-defendant Tormes–Ortiz, was also a client of attorney Figueroa does not prevent co-defendants Buitrago and García, who were also clients of attorney Figueroa, from raising the attorney-client privilege as it relates to them.

It is not unheard of, nor particularly unusual, for an individual or a corporation to pay the legal fees of another. In such cases, it is clear that the attorney's ethical duty, as well as the attorney-client privilege, is owed to the person who is being represented, not to the fee payor. The official comment to Rule 5.4(c) of the Model Rules of Professional Conduct[1] states:

---

1. Rule 5.4(c) of the Model Rules of Professional Conduct states: "A lawyer shall not permit a person who ... pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." *See also* Model Code of

"Where someone other than the client pays the lawyer's fee ... that arrangement does not modify the lawyer's obligation to the client."

Next, the government contends that the attorney-client relationship should not apply to defendants Buitrago and García because of the crime-fraud exception. The legal advice exception can be defeated through a prima facie showing that an agreement to furnish legal assistance was secured in furtherance of present or intended continuing illegality, such as where the legal representation itself is part of a larger conspiracy. *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 452 (6th Cir.1983), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984) (and cases cited therein). Such an agreement need not be express, and might even arise from a custom or a prior course of conduct. *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1029 (5th Cir.1982) (Unit A).

The government has made no mention of this legal theory until now. Nevertheless, we are asked to find, from the circumstantial evidence adduced at the hearing, that it has made a prima facie showing of a prior conspiratorial agreement to provide defendants with all their needs if they were arrested. This we cannot do. We are unable to ascertain the existence of a prior agreement to furnish legal assistance, or of a custom or prior course of conduct from which we could infer such an agreement.

The government also contends that this court erred in finding that defendants Buitrago and García did not waive the attorney-client privilege because of the presence of a third party during communications between defendants and attorney Figueroa. After considering the points raised by the government, we reaffirm our conclusion that defendants Buitrago and García have not waived their attorney-client privilege.

Finally, the government seeks clarification of our order regarding possible testimony of attorney Figueroa which it alleges is not covered by the attorney-client privilege. The government refers specifically to certain testimony of Figueroa at the

Professional Responsibility DR5–107(B) (1980)

evidentiary hearing. A review of that testimony suggests that it consists of two distinguishable categories: (1) That which concerns what attorney Figueoroa did, how he did it, and with whom he did it, and; (2) That which concerns the payment or possible payment of the legal fees and expenses associated with Figueroa's representation of defendants Buitrago and García. Our Order of April 18, 1989 held that the attorney-client privilege excluded the testimony of attorney Figueroa regarding the identity of the person[s] who paid the fees and/or expenses of attorney Figueroa for his legal representation of defendants Buitrago and García, concerning the amount and nature of those fees and/or expenses, and concerning communications between attorney Figueroa and defendants Buitrago and García.

Regarding possible testimony of attorney Figueroa which is not specifically covered in our Order of April 18, 1989 as described above, we must remember that the attorney-client privilege exists to encourage people to seek legal advice freely and to speak candidly to the attorney without fear that the communication will be disclosed. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Nevertheless, the suppression of relevant information which results from the attorney-client privilege frustrates the fact-finding process, thereby creating an inherent tension with society's need for full and complete disclosure of all relevant evidence during the judicial process. *See In re Grand Jury Investigation No. 83–2–35, supra*, 723 F.2d at 451; *In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 671–72 (5th Cir.1975) ("the purpose of the privilege —to suppress truth—runs counter to the dominant aims of law"). These competing societal interests demand that application of the privilege not exceed the scope necessary to effect the policy considerations underlying the privilege, i.e., "the privilege must be upheld only in those circumstances for which it was created." *In re Walsh*, 623 F.2d 489, 492 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (substantially identical).

(1980). *Accord Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) ("it applies only where necessary to achieve its purpose"). As such, any exception to the rule that the identity of a client is not privileged is to be narrowly construed so that the search for truth will not be hindered by the attorney-client privilege any more than that which is absolutely necessary to protect the policies underlying the privilege. Insofar as testimony regarding the personal activities and associations of attorney Figueroa do not concern communications between defendants and attorney Figueroa or the payment or possible payment of Figueroa's legal fees and expenses, we find that such testimony should not be excluded under the attorney-client privilege.

In view of the above, we hereby clarify our Order of April 18, 1989 to the effect that testimony of attorney Figueroa which is barred pursuant to the attorney-client privilege is limited to that which concerns: (1) communications between attorney Figueroa and defendants Buitrago and García; (2) the identity of the person who paid the fees and/or expenses associated with the legal representation by Figueroa of Buitrago and García, and; (3) the amount or manner of payment of fees and/or expenses associated with the aforementioned legal representation.

Wherefore, in view of the foregoing, our Order of April 18, 1989 is hereby clarified in accordance with this order, and the government's motion for reconsideration is hereby DENIED.

SO ORDERED.