### In re GRAND JURY PROCEEDINGS (John DOE, Esq.).[1]

#### Misc. No. X–P.

United States District Court, D. Rhode Island.

Jan. 7, 1985.

---

1. The matters at issue in this motion to compel testimony concern subjects currently under investigation by a grand jury sitting in this Court. The identities of the parties involved, as well as the pleadings filed in connection with the motion, have been sealed by order of the Court.

To protect the secrecy of these matters, this opinion uses pseudonyms in place of true names and locations. A sealed statement keying the pseudonyms to the true names has been filed with the Clerk of Court.

James H. Leavey, Asst. U.S. Atty., Providence, R.I., for U.S. Government.

Norman S. Zalkind, Boston, Mass., for John Doe.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Before the court is a motion to compel an immunized grand jury witness, John Doe, Esq., to answer several questions propounded to him by the United States government. The witness has refused to answer the questions, claiming that various provisions of the federal Constitution, as well as the attorney-client privilege, shield him from having to do so. Having previously determined that Doe's constitutional objections lack merit, the sole issue remaining is whether the attorney-client privilege may properly be invoked by Doe on his client's behalf.

The facts surrounding this controversy may be briefly summarized. Doe, a practicing attorney from Boston, Massachusetts, represented one Fred Jones in a criminal trial in this district. Mr. Jones was convicted of drug offenses for his participation in a certain drug operation (hereafter, "the Operation"), and his conviction was sustained on appeal. The grand jury is continuing to hear further testimony relevant to the Operation. Among the grand jury's current targets is one Bob Smith. The grand jury has heard testimony that Smith rented a house in Anytown, Rhode Island, which was to be utilized in distributing the drugs involved in the Operation.

The testimony linking the individual who goes or went by the name Bob Smith, to the rental house came from Dick Brown, a real estate broker. Brown has stated that when Smith sought to lease the premises, he gave the name of his attorney, John

Doe, as a reference. Brown telephoned Doe in Boston and according to Brown, Doe vouched for Smith, stated that he knew Smith as an investment broker, and stated that he considered Smith a person able to meet financial obligations on a timely basis. The broker further testified that Doe's reference led to Smith's obtaining the lease.

Doe has previously appeared before the grand jury. He was called initially in 1982, while he was representing Fred Jones. In an affidavit sworn in August 1982, in support of his then-pending motion to quash the subpoena to him, he stated, *inter alia,* that he represented Smith for a period beginning and ending in Spring, 1982, on a "landlord tenant" matter. Doe further stated that all communications between Smith and himself "were made in confidence for the purpose of obtaining legal advice with no other persons present or listening in on said communications." He has asserted, and continues to assert, the attorney-client privilege in refusing to respond to the following questions:

> (14) Are you acquainted with a person known as Bob Smith?
>
> (54) ... do you know or have you ever known anyone bearing the name Bob Smith or using the name Bob Smith as an alias?
>
> (55) ... do you know anyone bearing the name Bob Smith or who uses the alias, Bob Smith ... I also asked you, Mr. Doe, if you have ever made any note of any vehicles driven by one known to you as Bob Smith, and to provide us with the description of those vehicles, and in addition, ask you if you have any knowledge of Mr. Smith's last known address and telephone number, either his last known address and telephone number, or the address and telephone number that you utilized while you allegedly represented him as an attorney?

\*   \*   \*   \*   \*   \*

> (25) ... with respect to your purported legal services, that you provided to Mr. Smith, did you ever establish a fee

schedule, or did you ever receive a retainer,—... or did you ever maintain a case file with respect to this purported representation of Mr. Smith?

\*   \*   \*   \*   \*   \*

> (36) I now wish to ask you, sir, what was the conversation, as you recall it, between yourself and Dick Brown [the real estate broker] concerning Bob Smith?
>
> (41) Have you ever served as a reference for Bob Smith, particularly in the late spring and summer of 1982?
>
> (42) Do you recall having occasion to speak with a Dick Brown, a real estate broker in Anytown, Rhode Island, concerning the proposed rental of a residence on Any Road in Anytown, Rhode Island, by an individual who identified himself to Brown as being Bob Smith?
>
> (46) In the spring and summer of 1982, were you ever advised by anyone that you may be receiving a call advising you that you were being inquiried of concerning Bob Smith's background or his abilities to honor a lease while a tenant?
>
> (48) ... in the spring or summer of 1982, were you ever advised by anyone that you may be receiving a call advising you that you were going to be inquiried of concerning the background and his abilities to honor a lease while a tenant?
>
> (52) Do you agree that you, in fact, did have a conversation with Dick Brown?
>
> (56) ... would you advise us as to where the real estate was located, which was the subject of landlord/tenant advice rendered to Bob Smith by you ...?

\*   \*   \*   \*   \*   \*

These questions, many of which are repetitive, may be divided into three categories, grouped as I have grouped them above. The first category, consisting of questions 14, 54 and 55, concerns the identity and whereabouts of Smith ("the identity questions"). The second category, consisting of questions 36, 41, 42, 46, 48, 52 and 56, concerns whether Doe acted as a reference

for Smith in a conversation with Brown, what was said in this conversation, and where the premises involved are located ("the broker conversation questions"). The third category, consisting solely of question 25, concerns any fee arrangement between Doe and Smith, as well as any case file that Doe may have opened for Smith ("the fee and case file question"). After setting forth the relevant legal principles governing the application of the attorney client privilege to testimony by an attorney-witness, I will analyze separately each of the three question categories.

■ The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) *citing* 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961). In order to retain its protected character, a communication must be intended by the client to be confidential and must not be disclosed to third parties. *See, e.g., U.S. v. Bigos*, 459 F.2d 639, 643 (1st Cir.), *cert. den.* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); Wigmore, *supra*, § 2292 at 554. The privilege operates "to encourage clients to make full disclosure to their attorneys" and, accordingly, "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577. In other words, "the privilege protects only confidential communications, not the attorney-client relationship as a whole." *In the Matter of Walsh*, 623 F.2d 489 (7th Cir.), *cert. den.* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

■ Special problems can arise when an attorney is called to appear as a witness before a grand jury. Such a circumstance is fraught with the tension between the broad investigatory powers of the grand jury and the solicitude traditionally accorded attorney-client confidentiality. *See generally, In the Matter of Walsh, supra;* Zwerling, *Federal Grand Juries v. Attorney Independence and the Attor-*

*ney/Client Privilege*, 27 Hastings L.J. 1264 (1976). Courts must be solicitous in guarding against grand jury abuse through this practice. *See, e.g., In Re Grand Jury Matters*, 593 F.Supp. 103 (D.N.H.1984). The principles governing this sensitive area have been coherently set forth in several recent cases. *See, e.g., United States v. Pioggia*, Cr. No. 82–231–K (D.Mass. Sept. 21, 1983) (Slip Op.) (Keeton, J.); *United States v. Hodge and Zweig*, 548 F.2d 1347 (9th Cir.1977); *In the Matter of Walsh, supra.*

■ As a general matter, disclosure by an attorney of the identity of his or her client, and the receipt of fees from a client, are not confidential communications protected by the privilege. *United States v. Strahl*, 590 F.2d 10, 11 (1st Cir.1978); *Hodge and Zweig, supra*, 548 F.2d at 1353 (9th Cir.1977); 2 J. Weinstein and M. Berger, Weinstein's Evidence, § 503(a)(4)[02] (1982). In certain circumstances, however, information relating to those areas of inquiry may be privileged. The initial burden rests with the attorney-witness to establish that a privilege exists, which includes establishing the fact of an attorney-client relationship. *Walsh, supra*, 623 F.2d at 493. Once that burden is carried, the Government must then "show a need for the information sought." *Pioggia, supra*, at 2. If the Government demonstrates legitimate need, the privilege may nevertheless be asserted if the "person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate [the] client in the very criminal activity for which legal advice was sought." *Pioggia* at 2, *quoting Hodge and Zweig, supra*, at 1353; *accord United States v. Strahl*, 590 F.2d 10, 11–12 (1st Cir.1978) (*citing Hodge and Zweig*). If the attorney-witness can make this showing, then the identity and fee information are protected by the privilege. However, the Government may nevertheless defeat such a claim of privilege if it can make a *prima facie* showing that the "legal representation was secured in furtherance of intended, or present, continuing illegality." *Piog-*

*gia* at 2, *quoting Hodge and Zweig*, 548 F.2d at 1354. Upon such a showing, protection is denied to otherwise privileged information, because the "privilege generally does not extend to confidences concerning present and future criminal activity." *Grieco v. Meachum*, 533 F.2d 713, 714 n. 4 (1st Cir.), *cert. den.* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976) (citations omitted). *See generally* 2 Weinstein and Berger, *supra*, § 503(d)(1)[01] (1982).

I must now apply the foregoing principles to the questions at issue here.

A. *The Broker Conversations Questions* (Questions 36, 41, 42, 46, 48, 52 and 56)

■ These questions seek information from Doe about his conversation with Brown, the broker. I conclude that these questions are not privileged in the first instance because they plainly concern a non-confidential communication. According to Brown's testimony, the conversation took place at the client Smith's instigation. The very purpose of the conversation was, by the client's design, to have attorney Doe discuss with a third party the client's worthiness as a tenant. And Doe was expressly identified to Brown as Smith's attorney. Accordingly, such a conversation is a far cry from the "[c]onfidential disclosures by a client to an attorney," *Fisher v. United States, supra*, 425 U.S. at 403, 96 S.Ct. at 1577, which are at the heart of the privilege, and Smith, through Doe, may not now attempt to shroud that conversation in a false veil of secrecy.

There being no attorney-client privilege protecting this conversation, attorney-witness Doe must answer questions about the conversation, just as any lay witness would be required to do. He must testify to the Grand Jury about the location of the premises, if it was mentioned, and about the circumstances surrounding the conversation. Questions 36, 41, 42, 46, 48, 52 and 56 are not privileged.

B. *The Identity and Whereabouts Questions* (Questions 14, 54 and 55)

■ These questions ask Doe whether he is acquainted with Smith, whether he knows if the name Bob Smith is an alias, and whether he has other identifying information about Smith, *i.e.*, address, phone number or motor vehicle type.

At least insofar as these questions query Doe as to whether he knows Smith and whether Smith is an alias, any claim of confidentiality would now be hollow, indeed, for the reasons just discussed. Because Smith volunteered Doe to a third party as a reference, he can hardly now claim that his acquaintance with Doe and his real name were intended to be confidential matters between his attorney and himself.

■ Even absent this lack of confidentiality, however, the privilege would not protect the identity and whereabouts information sought here. In my judgment, the Government has met its burden to make a *prima facie* showing that Smith retained Doe with respect to the Any Town lease, to further "intended, or present, continuing illegality." *Pioggia, supra*, at 2, *quoting Hodge and Zweig*, 548 F.2d at 1354. In exhibits attached to prior memoranda addressing Doe's testimony, the Government has set forth the evidence which is before the grand jury connecting the leased premises to the drug operation. *See* Government's Memorandum in Support of Motion to Compel (Sept. 10, 1982). Doe challenges neither the sufficiency of that evidence to make this *prima facie* showing, nor the sufficiency of the broker's testimony to link Smith to those premises. Nor could Doe credibly make such a challenge, for the information before the grand jury is clearly sufficient to satisfy the court that the Government has made the requisite showing that any legal assistance secured by Smith with respect to the lease was secured in furtherance of the Operation. Further, even if Doe was not aware that his client sought advice in furtherance of a crime—and there has been no allegation that Doe was aware of his client's intent—this exception to the privilege would nevertheless apply, for only the client need have had the illegal purpose in mind. *See U.S.*

*v. Friedman*, 445 F.2d 1076, 1086 (9th Cir. 1971); *U.S. v. Calvert*, 523 F.2d 895, 909 (8th Cir.1975) *cert. den.* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

So strong is the insistence, "accepted by all courts today ... that a client's communication to his attorney in pursuit of a criminal or fraudulent act yet to be performed ... not [be] privileged in any judicial proceeding," 2 Weinstein and Berger, *supra,* § 503(d)(1)[01], at 503–68, *quoting In Re Sawyer's Petition,* 229 F.2d 805, 809 (7th Cir.1956), that not even the whereabouts information [2] sought from Doe may be withheld under color of the privilege. For where a client "abuse[s] the confidential relation by using it to further a ... criminal scheme," *Hodge and Zweig, supra,* at 1355, the purposes underlying the privilege are not served by frustrating disclosure of even potentially incriminating information. *Id; Pioggia, supra,* at 2, 4.

Accordingly, for all of the foregoing reasons, I rule that the privilege does not apply to questions 14, 54 and 55.

### C. The Fee and Case File Questions (Question 25)

#### 1. Fee

█ This question may be seen as seeking information as to the fee paid by Smith for legal services rendered in connection with the Any Town lease. Because I have found that the Government has made a *prima facie* showing that these services were secured in furtherance of a crime, to the extent that the question is asking about fees in connection with the lease, it is unprivileged because of the fraud-crime exception.

The government, however, states in its memorandum that the purpose of this question is to determine whether Smith paid the legal fees of convicted conspirator Fred Jones, whom John Doe represented. Because the inquiry, thus viewed, asks about legal fees paid in connection with a potentially-protected consultation about a past crime—and not an unprotected continuing crime—I will undertake the scrutiny required of fee questions generally.

█ At the threshold, it is unclear that Smith can meet his burden to establish that he had an attorney-client relationship with Doe [3] with respect to the past drug crime, *see In the Matter of Walsh, supra.* Absent such a relationship, Smith would not be entitled to invoke the privilege in the first instance with respect to this fees question. *Compare Pioggia, supra,* at 4 (preliminary determination that attorney is privileged not to disclose whether one client paid fees for representation of another criminal defendant, where alleged paying client *had engaged attorney for advice on same criminal matter*). But even assuming *arguendo* that Smith's attorney-client relationship with Doe on separate matters is sufficient to call the privilege into play with respect to this fees question, the circumstances here do not justify an exception to the normal rule that fee information is not privileged. The Government has plainly articulated need for the information: if Smith did, in fact, pay Fred Jones' legal fees, he could be further linked to the Operation. The somewhat more difficult question is whether Doe has met his burden to show that "disclosure of [the fee paid by] the client would implicate that client in the very criminal activity for

---

**2.** It is noteworthy that many courts have held that identifying information, such as address, phone number or physical appearance, is generally unprivileged, either because it is considered part of the client's "identity," *see, e.g., Burden v. Church of Scientology,* 526 F.Supp. 44, 45 (M.D. Fla.1981), *citing* J. McCormick, Evidence, § 90 at 185–7 (1972), or because, absent special circumstances, such information is not confidential, *see In The Matter of Walsh, supra,* 623 F.2d at 493; *In Re Grand Jury Subpoenas Served Upon Field,* 408 F.Supp. 1169 (S.D.N.Y.1976).

**3.** Any attempt to argue that Fred Jones' attorney-client relationship with Doe should bar disclosure would be fruitless. Since Jones has already been convicted for his role in the drug operation, *he* could not be further incriminated by any disclosure about who paid his fees. *See Hodge and Zweig, supra,* 548 F.2d at 1353–54. Accordingly, no exception to the general rule exempting fee information from the privilege could properly be invoked by Jones.

which legal advice was sought." *United States v. Strahl,* 590 F.2d 10, 11 (1st Cir. 1978) *quoting Hodge and Zweig, supra,* 548 F.2d at 1353. This exception to the rule of disclosure of fee information is a narrow one, to be applied "only where revealing [the] information probably would incriminate a client on the *same charges for which the client sought legal assistance." In Re Grand Jury Witness (Waxman),* 695 F.2d 359, 361 (9th Cir.1982) (emphasis added).

■■■ On close scrutiny of the facts, it is apparent that Smith, through Doe, may not properly seek refuge from disclosure in this doctrine. It is true that he might be incriminated in the drug operation by a disclosure that he paid Fred Jones' fees. But, according to Doe's affidavit, Smith sought legal advice from him only on "landlord tenant matters." There is no contention that Smith sought legal advice in connection with the drug investigation conducted by the Grand Jury. Thus, like the client in *U.S. v. Strahl, supra,* Smith cannot rely on a risk of incrimination on charges about which he never consulted his attorney—even if he established an attorney-client relationship with regard to other matters. *Accord In Re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1029 (5th Cir.1982) (Rubin, J., concurring).

In sum, then, the fee question is not privileged—because of the crime-fraud exception, to the extent that it inquires about fees for services rendered on the lease, and because of Doe's failure to fit within the narrow "incrimination" exception to the general rule holding fee information unprivileged, to the extent that it inquires about who paid Fred Jones' fees.[4]

### 2. The Case File

■■■ I believe this question, in contrast to all of the others, raises a danger of potential overreaching. Because I cannot know what would be in any case file kept by Doe for Smith, I likewise cannot say with certainty that none of the materials inside of such a file would be privileged. If, for example, Smith consulted Doe on legitimate real estate matters, independent of the Any Town lease, then information relating to such separate consultations might be in the same folder and might be protected by the privilege. Similarly, it is impossible to know whether there would be in such a file any material relevant to separate litigation, which might be protected as Doe's work product. *See In Re September 1978 Grand Jury,* 640 F.2d 49 (7th Cir. 1980) (if prerequisites of work product doctrine are otherwise met, it may be invoked by attorney to protect attorney's impressions, conclusions and theories, even where continuing crime or fraud vitiates client's attorney-client privilege, so long as attorney was without knowledge of that crime or fraud). If the file contained solely non-work product-protected materials, relevant only to the continuing crime, the existence of which the Government has made a *prima facie* showing, the file would be unprivileged. *Id.* While nothing in the record indicates that Doe did, in fact, represent Smith on such separate matters, the risk of overreaching is sufficient to suggest caution in ruling on this question. Accordingly, I rule that Doe must state *whether or not* he kept a case file for Smith. If the answer is in the affirmative, I will make an *in camera* inspection of that file before ruling on whether or not Doe must testify as to its contents.

So Ordered.

---

4. Because of this disposition of the fee question, I need not and do not decide whether there has been any *prima facie* showing that an agreement to pay Jones' fees would constitute a separate, ongoing crime. *See Pioggia, supra,* at 4; *In Re Grand Jury Proceedings, (Pavlick), supra,* 680 F.2d at 1029 (Gee, J.) (plurality).