UNITED STATES of America,

v.

Stephen A. SACCOCCIA, et al.

Crim. No. 91–115–T.

United States District Court,
D. Rhode Island.

Aug. 28, 1995.

James Leavey, Michael Davitt, Asst. U.S. Attorneys, Providence, RI, for plaintiff.

John Hill, San Francisco, CA, W. Kenneth O'Donnell, Providence, RI, Robert Luskin, Washington, DC, for S. Saccoccia.

Lawrence J. Semenza, Reno, Nevada, for D. Saccoccia.

Robert D. Watt, Providence, RI, for A. DeMarco.

Scott Lutes, Providence, RI, for D. Izzi.

Mary J. Ciresi, Providence, RI, for J. Saccoccio.

Edward Roy, Providence, RI, for K. Saccoccio.

Frederick Cass, No. Kingstown, RI, for V. Hurley.

James T. McCormick, Providence, RI, for S. Cerilla.

Eugene Toro, Providence, RI, for J. Smith.

Joel Herschhorn, Coral Gables, Florida, Rick Corley, Providence, RI, for S. Pizzo.

Vincent Indeglia, Providence, RI, for C. DeMarco.

P. DiBiase, Providence, RI, for P. Iannuccilli.

Richard Gonnella, Providence, RI, for A. Gabriele.

## MEMORANDUM AND ORDER

TORRES, District Judge.

Stephen A. Saccoccia, Donna Saccoccia, and Vincent "Mickey" Hurley (the "defendants") have been convicted of various money laundering offenses and of a RICO conspiracy to launder money derived from the illegal sale of narcotics. The judgments entered pursuant to their convictions require them to forfeit the sum of $136,344,231.87, which represents the proceeds of their racketeering activity.

The Government, relying on 18 U.S.C. § 1963(k) and 21 U.S.C. § 853(m) as incorporated by 18 U.S.C. § 982(b)(1)(A), has applied for an order authorizing it to depose several attorneys who represented the defendants at various stages of the criminal prosecution and further requiring the production of unspecified documents for the purpose of identifying and locating assets of the defendants that may be used to satisfy the forfeiture judgment. The principal questions presented are whether allowing the Government to depose counsel with respect to the fee arrangements between them and their clients would violate the attorney-client privilege, the Fifth Amendment's privilege against self-incrimination and/or the defendants' Sixth Amendment right to counsel. For reasons stated below, I find that the answer to each of these questions is, no.

### Background

The forfeiture order constitutes a money judgment against the defendants and may be satisfied either from the proceeds of their racketeering activity, property derived from those proceeds or, if such proceeds or property have been concealed, from any other property belonging to the defendants. 18 U.S.C. §§ 1963(a)(1), (3) and (m);[1] *United States v. Saccoccia,* 823 F.Supp. 994, 1001–1002, 1004–1005 (D.R.I.1993), *aff'd,* 58 F.3d 754 (1st Cir.1995); *see also United States v. Navarro-Ordas,* 770 F.2d 959, 970 (11th Cir. 1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986); *United States v. Ginsburg,* 773 F.2d 798, 801 (7th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). The Government seeks to depose counsel because only a portion of the amount declared forfeited has been recovered and because the number of attorneys they have employed suggests that the defendants may have considerable sums of money at their disposal.

When the Government filed its application, appeals by all of the defendants were pending and Stephen Saccoccia was awaiting trial in California on related conspiracy and money laundering charges. Furthermore, litigation was underway challenging the Court's authority to adopt a local rule requiring prosecutors to obtain judicial approval before issuing subpoenas directing lawyers to provide evidence concerning their clients. Because it appeared likely that resolution of those cases would significantly affect the issues presented in this case, the Court deferred action on the Government's application until those cases were completed.

The time for decision, now, has arrived. The Court of Appeals for the First Circuit has affirmed the convictions and forfeiture orders against all of the defendants. *Saccoccia,* 58 F.3d 754; *United States v. Hurley,* 63 F.3d 1 (1st Cir.1995). In addition, the California indictment against Stephen Saccoccia was dismissed by the Government.[2] Finally,

---

1. The money laundering statute under which the defendants also were convicted contains similar forfeiture provisions. *See* 18 U.S.C. § 982. However, the amounts forfeited for those offenses are subsumed by the $136,344,231.86 forfeited under § 1963. *See United States v. Saccoccia,* 823 F.Supp. 994, 1005–1006 (D.R.I.1993), *aff'd,* 58 F.3d 754 (1st Cir.1995).

2. The dismissal was without prejudice and occurred prior to the First Circuit's affirmance of Stephen Saccoccia's conviction. Presumably, it reflected a determination that, since Stephen Saccoccia received a 660-year sentence, there was no reason to proceed with the California prosecution if his conviction was upheld. *See Government's Motion for Dismissal of Indictment*

the First Circuit has upheld this Court's rule[3] requiring prosecutors to obtain Court approval before issuing subpoenas that seek information from attorneys regarding their dealings with clients. *Whitehouse v. U.S. District Court for the District of Rhode Island,* 53 F.3d 1349 (1st Cir.1995).

### Discussion

■ The defendants and their counsel urge that the Government's application should be denied for a variety of reasons. In accordance with the admonition that courts should "avoid deciding constitutional questions presented unless essential to proper disposition of a case," *Harmon v. Brucker,* 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958), the Court will first consider those arguments that do *not* raise Constitutional issues.

### I. *ATTORNEY–CLIENT PRIVILEGE*

■ The purpose of the attorney-client privilege is to encourage the client to make full disclosure of all pertinent facts to the attorney so that the attorney may render informed legal advice with respect to the matters about which the attorney is consulted. *Fisher v. U.S.,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Matter of Grand Jury Proceeding, Cherney,* 898 F.2d 565, 567 (7th Cir.1990). The privilege is based on the concern that if damaging information communicated in confidence to an attorney later might be revealed to third parties, the client would be deterred from making a full disclosure. *Fisher,* 425 U.S. at 402–03, 96 S.Ct. at 1577; *see also In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247 (2nd Cir.1986), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). Although the privilege occasionally may deprive the Government of evidence necessary to convict a criminal, that is the price extracted by a system of justice that places a premium on an individual's right to

the effective assistance of counsel. *Cherney,* 898 F.2d at 569.

■ However, because the privilege may cause relevant information to be withheld from the fact finder, it applies only to the extent necessary to achieve its purpose. *Fisher,* 425 U.S. at 402–03, 96 S.Ct. at 1577; *Cherney,* 898 F.2d at 567. Consequently, the privilege does not necessarily extend to all information imparted to an attorney during the course of representing a client. The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher,* 96 S.Ct. at 1577. To put it another way, communications by the client are privileged only if they are both confidential and made in order to obtain effective legal assistance. *Cherney,* 898 F.2d at 567; *Doe,* 781 F.2d at 247; *In re Grand Jury Proceedings (Doe),* 602 F.Supp. 603, 607 (D.R.I.1985).

■ Moreover, with respect to criminal matters, the privilege applies only if the advice sought relates to past conduct. The "crime/fraud" exception renders the privilege inapplicable to information provided for the purpose of obtaining advice about ongoing criminal activity or plans to commit criminal acts in the future. *In re Grand Jury Proceedings (Doe),* 602 F.Supp. at 608. The crime/fraud exception comes into play even if the attorney is unaware of the client's purpose. Seeking advice in order to further an ongoing or future criminal activity constitutes an abuse of the attorney-client relationship and, in such cases, the purpose of the privilege is not served by preventing disclosure. *In re Grand Jury Proceedings (Doe),* 602 F.Supp. at 608–609; *U.S. v. Hodge and Zweig,* 548 F.2d 1347, 1355 (9th Cir.1977); *Grieco v. Meachum,* 533 F.2d 713, 718 n. 4 (1st Cir.1976), *cert. denied,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976).

*Against Defendant Steven* [sic] *Saccoccia And Order* in No. CR 91–1040(A)–Kn (order of David V. Kenyon, United States District Judge, Central District of California, dated December 1, 1994).

**3.** Rule 3.8(f) of the Rules of Professional Conduct of the Rhode Island Supreme Court (hereinafter "Rule 3.8(f)"). On April 20, 1989, this Court

issued an order incorporating (by amending Local Rule 4(d)) the Rhode Island Rules of Professional Conduct, including Rule 3.8(f), into this Court's Local Rules. *See Whitehouse v. U.S. District Court for the District of Rhode Island,* 53 F.3d 1349, 1353 (1st Cir.1995).

■ The party invoking the attorney-client privilege has the burden of establishing that it applies. *U.S. v. Wilson,* 798 F.2d 509, 512 (1st Cir.1986); *U.S. v. Gertner,* 873 F.Supp. 729, 734 (D.Mass.1995). However if the Government claims that the "crime/fraud" exception applies, it has the burden of making a *prima facie* showing to that effect. *In re Grand Jury Proceedings (Doe),* 602 F.Supp. at 608.

■ Generally speaking, neither the identity of a client nor information regarding fee arrangements is protected by the attorney-client privilege. *In re Grand Jury Subpoenas,* 906 F.2d 1485, 1488 (10th Cir.1990); *Doe,* 781 F.2d at 247; *see also U.S. v. Strahl,* 590 F.2d 10, 11 (1st Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). The reason for excluding fee information is that, ordinarily, such information does not constitute a confidential communication relating to the advice sought. *Cherney,* 898 F.2d at 567; *Doe,* 781 F.2d at 247–48. In the words of the Second Circuit, "While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously." *Doe,* 781 F.2d at 247–248.

However, there may be exceptional cases in which fee information is so intertwined with the matter about which counsel is consulted that the threat of disclosure would deter the client from communicating information necessary to obtain informed legal advice. The case law reflects considerable confusion with respect to the criteria to be applied in determining when those circumstances exist. Some decisions seem to suggest that fee information is protected when it is likely to incriminate the client with respect to the matter about which he consulted counsel. *See In re Grand Jury Subpoenas,* 906 F.2d 1485, 1488 (10th Cir.1990) (citing such decisions); *U.S. v. Sepenuk,* 864 F.Supp. 1002, 1006 (D.Or.1994) (same). That notion, commonly referred to as the "legal advice" exception, often is attributed to the Ninth Circuit's decision in *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). Thus in *Hodge and Zweig* the Court required disclosure of the fee information at issue but cited *Baird* for the proposition that "... the nature of [a] client's fee arrangement may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *Hodge and Zweig,* 548 F.2d at 1353.

However, the Ninth Circuit since has repudiated any suggestion that *Baird* should be read as automatically making fee information privileged merely because it may be incriminating. It has focused, instead, on whether the information reveals confidential attorney-client communications. *See In re Subpoena to Testify Before the Grand Jury, Alexiou,* 39 F.3d 973, 976 (9th Cir.1994) ("[The] exception to the no-privilege rule does not operate in every instance where disclosure of the client's identity would incriminate the client or lead to indictment. 'In order to qualify for the protection afforded by the attorney-client privilege, information regarding client identity or legal fees must be "in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney." ' ") (*quoting In re Grand Jury Subpoena (Osterhoudt),* 722 F.2d 591 (9th Cir.1983)) (other citations omitted); *In re Grand Jury Subpoenas,* 803 F.2d 493, 497 (9th Cir.1986). That view is shared by those circuits that most recently have addressed the issue. *See In re Grand Jury Matter (Special Grand Jury Narcotics Dec. Term, 1988, Motion to Quash Subpoena),* 926 F.2d 348, 352 (4th Cir.1991) (privilege did not preclude attorneys from producing documents pertaining to fee arrangements absent evidence that arrangements, in and of themselves, were confidential communication); *Cherney,* 898 F.2d at 567–568 (identity of person who paid attorney legal fees was protected by attorney-client privilege, but only because disclosure of the identity would convey substance of a confidential communication, not merely because it would be incriminating; "[T]he fact that fee information may tend to incriminate a client does not transform the information into a confidential communication, and incriminating information which is not part of a confidential communication falls outside the ambit of the privi-

lege.... [T]he privilege is limited to confidential communications...."); *Doe,* 781 F.2d at 248 (absent special circumstances, disclosure of fee information and client identity is not privileged even though it might incriminate the client); *Matter of Witnesses Before The Special March 1980 Grand Jury,* 729 F.2d 489, 492–495 (7th Cir.1984) ("[I]nformation about a known client's fees is privileged only if, under the circumstances, its disclosure would in effect reveal confidential communications between the attorney and client.").

The First Circuit has not yet ruled on the specific question of whether the possibility of incrimination is, by itself, sufficient to render fee information privileged. In *Strahl,* the Court, citing *Baird,* did recognize that the identity of a client may be privileged when identification "amount[s] to the prejudicial disclosure of a confidential communication." *Strahl,* 590 F.2d at 11. The Court distinguished *Baird* on the ground that, in *Baird* "disclosure of [the identity] of the client would [have] implicate[d] that client in the very criminal activity for which legal advice was sought." *Strahl,* 590 F.2d at 11. However, the Court determined that, in a prosecution for counterfeiting stolen treasury notes, an attorney who had previously represented the defendant with respect to unrelated matters could be required to identify the defendant as the man who had tendered stolen treasury notes in payment for the past legal services. The *Strahl* Court held that the payments at issue in that case were not privileged because there was "no indication that [the defendant] went to [the attorney] for legal advice concerning his counterfeiting activities and disclosed confidential information to him" and because preventing disclosure of "a fraudulent act as well as a convenient means of unloading highly incriminating evidence, possession of which was itself a crime" did not further the policies underlying the attorney-client privilege. *Strahl,* 590 F.2d at 11–12.

■ *Strahl* was decided long before the Ninth Circuit clarified its holding in *Baird.* Nevertheless, a close reading of *Strahl* indicates that, in order to fall within the "legal advice" exception, fee information must amount to or reveal confidential communications regarding the advice sought from the attorney. In short, the fee information must satisfy the requirements of the attorney-client privilege and does not become privileged simply because it might incriminate the client.

■ In this case, the defendants have failed to establish that information regarding the amount, form or source of the legal fees paid should be treated as confidential attorney-client communications necessary to obtain legal advice with respect to their money laundering activities. Although payment of a fee undoubtedly was a prerequisite to retaining the services of counsel, the defendants presumably had the option to determine the form of payment and whether or not to divulge the sources. Furthermore, the mere fact that the amount of fees paid may constitute evidence of unexplained wealth that arguably could have been derived from criminal activity is insufficient to invoke the attorney-client privilege. *Doe,* 781 F.2d at 248. *Cf. Gertner,* 873 F.Supp. 729.

Moreover, even if the possibility of incrimination, alone, were sufficient to satisfy the "legal advice" exception, the exception would have no application to this case. As already noted, all of the defendants now stand convicted of the offenses with which they were charged and their appeals from those convictions have been exhausted. Consequently, disclosure of information regarding the fees they paid can no longer implicate them in those offenses. *See Hodge and Zweig,* 548 F.2d at 1353–1354.

■ Finally, to the extent the defendants are suggesting that the fee information is confidential because the amounts paid were derived from the money laundering activities about which they consulted counsel, their claim of privilege would be defeated by the crime/fraud exception. Such payments would constitute continued laundering of illicitly-derived proceeds. *See* 18 U.S.C. §§ 1956 and 1957.

## II. *THE STATUTES AUTHORIZING DISCOVERY*

■ The defendants correctly observe that the Court has discretion to decide

whether the Government should be permitted to depose counsel pursuant to 18 U.S.C. § 1963(k) and/or 21 U.S.C. § 853(m). Both statutes provide that:

"... the Court *may,* upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition ..." [emphasis added]

The defendants argue that, in this case, the application should be denied because the Government has failed to demonstrate a sufficient need for deposing counsel and there is a risk that such action may "drive a 'chilling wedge' between the attorney and client, create conflicts of interest, undermine an attorney's ability to represent his client and potentially lead to disqualification of the attorney." In support of their argument, the defendants point to Rule 3.8(f), which, as already noted, requires a prosecutor to obtain Court approval before issuing subpoenas that would compel lawyers to provide evidence concerning their clients that was obtained as a result of the attorney-client relationship.

The short answer to that argument is that the concerns underlying Rule 3.8(f) are not implicated in this case. The overriding purpose of the rule is to ensure that subpoenas do not become instruments of abuse that infringe on the attorney-client privilege, deprive a defendant of the Sixth Amendment right to effective assistance of counsel or otherwise unjustifiably interfere with the defendant's legal representation. Here, those matters are no longer factors warranting consideration. There is no risk that counsel will be disqualified from continuing to represent their clients in this case or that such representation will be undermined by their testimony because the case has been terminated. *Cf. Doe,* 781 F.2d at 245 (noting, in the context of an ongoing prosecution, that disqualification is not an inevitable consequence of an attorney's testimony before a grand jury as to the source of payments, but would be necessary only if the testimony were incriminating and the government were to go forward with prosecution and decide to call the attorney as a trial witness).

Furthermore, Rule 3.8(f) does not require the Government to demonstrate any greater need for information in order to obtain or enforce a subpoena directed to counsel than it would for any other subpoena. Rather, it provides a mechanism for determining, in advance, whether the Government should be precluded from seeking the information on the ground that it is protected by the attorney-client privilege or that issuance of the subpoena infringes on a defendant's Sixth Amendment rights or otherwise constitutes an abuse of the process. *See Whitehouse,* 58 F.3d at 1356–1359, 1360–1362; *see also Doe,* 781 F.2d at 244, 248.

In this case, there is ample reason for permitting the depositions of counsel pursuant to § 1963(k). As already noted, more than $136 million was laundered by these defendants and, to date, only a portion of the proceeds has been recovered or accounted for. Furthermore, the fact that the defendants have employed and continue to employ numerous attorneys provides reason to believe that they possess considerable assets. Whether those assets are "proceeds" of criminal activity or "substitute assets," they are subject to forfeiture. Since information regarding the amount, form and sources of any fees paid by the defendants to their counsel is likely to provide information that may be helpful in locating those assets, and since that information no longer implicates any of the concerns underlying Rule 3.8(f), the requirements of §§ 1963(k) and 853(m) have been satisfied.

### III. *SIXTH AMENDMENT RIGHT TO COUNSEL*

Like most of their other arguments, the defendants' argument that granting the Government's application would violate their Sixth Amendment rights has been blunted by intervening events.

The Sixth Amendment protects against unwarranted interference with defense counsel's trial preparation and prevents unjustifiably placing defense counsel in a position that might result in disqualification. The prospect of disqualification looms especially large when an attorney is subpoenaed to testify regarding dealings with a client who is being investigated or prosecuted for a criminal offense. *See In re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984) (express-

ing concern that subpoenaing an attorney while the client is awaiting trial· may drive a wedge between the attorney and client and may create a conflict of interest that could ultimately require disqualification of the attorney). However, that does not mean that counsel never may be subpoenaed when criminal charges are pending against the client. *Id.,* 751 F.2d at 19 (even when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of a defendant not to have his counsel's representation disturbed); *Doe,* 781 F.2d at 250 (the right to retain counsel of one's choice is not absolute but must give way when required by the fair and proper administration of justice).

In any event, the concerns underlying the Sixth Amendment no longer are implicated in this case. The defendants' trials are over. Consequently, the depositions sought by the Government will neither interfere with counsel's trial preparation nor create any risk that counsel will be disqualified from continuing to represent their clients with respect to criminal charges for which they were prosecuted. Indeed, the defendants' Sixth Amendment rights are no longer applicable because their appeals have been exhausted. *In re Grand Jury Subpoenas,* 906 F.2d at 1493.

The mere possibility that counsel might represent the defendants in some future prosecution does not alter matters. To begin with, there is no indication that any future prosecution is contemplated. More importantly, the defendants' Sixth Amendment rights with respect to any possible future prosecution have not yet attached. *Id.,* 906 F.2d at 1493 (Sixth Amendment rights do not attach prior to indictment); *Doe,* 781 F.2d at 243 (same).

## IV. *FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION*

The defendants and some of their attorneys argue that granting the Government's application would violate their Fifth Amendment privileges against self-incrimination with respect to the money laundering activities at issue in this case.

### A. *Defendants' Fifth Amendment Rights*

▮ The defendants' claims are unfounded for two reasons. First, once a defendant's conviction becomes final, he no longer is in danger of incriminating himself with respect to the crime charged and, therefore, the privilege against self-incrimination ceases to apply. *Hodge and Zweig,* 548 F.2d at 1352.

▮ Furthermore, the Fifth Amendment protects a *defendant* from being compelled to bear witness against himself. *See* U.S. Const. amend. V. A defendant's Fifth Amendment rights are not violated by a subpoena directed to his attorney because such a subpoena does not compel the defendant, himself, to do anything. *Fisher,* 425 U.S. at 396–97, 96 S.Ct. at 1574.

Consequently, any impediment to making inquiry of the attorney must be found in the attorney-client privilege, the Sixth Amendment right to counsel and/or the rules applicable to subpoenas, in general.

### B. *The Attorneys' Self-incrimination Rights*

▮ Counsel's rather surprising assertion of *their* privilege against self-incrimination presents different questions that are not as easily answered.

▮ A party claiming the privilege against self-incrimination must establish that the testimony being compelled creates a "substantial and real" as opposed to a "trifling and imaginary" risk of criminal prosecution. *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 704, 19 L.Ed.2d 889 (1968). In this case, counsel assert that their testimony would subject them to possible prosecution for money laundering based on charges that they knowingly took tainted funds as payment for their services. The Court finds that argument unpersuasive for several reasons.

First, among other things, conviction under the money laundering statutes requires proof that a defendant engaged in a monetary transaction involving the proceeds of unlawful activity and that the defendant knew that the money came from illegal sources. *See* 18 U.S.C. §§ 1956(a)(1), 1956(a)(2)(B), and 1957. Here, counsel do not even allege that they are under suspicion or investigation for money laundering. They argue that a possibility of prosecution exists

62

because the Government apparently believes that the defendants used tainted funds to pay their legal fees. However, even assuming that the Government's belief is well-founded, counsel have provided no reason for inferring either that counsel knew that the money paid to them came from illegal sources or that their testimony would assist the Government in establishing such knowledge.

On the contrary, such an inference would be inconsistent with counsels' argument that the information sought is protected by the attorney-client privilege. Any use of tainted funds to pay the defendants' legal fees would have constituted a continuation of their money laundering efforts. As already noted, the crime/fraud exception renders the privilege inapplicable to communications regarding continuing or future criminal activity. Therefore, by arguing that the fee information at issue falls within the attorney-client privilege, counsel have implicitly represented that there was no reason for them to believe that any amounts paid to them were derived from illegal activities.

### Conclusion

For all of the foregoing reasons, I find that the Government should be permitted to depose counsel and require the production of relevant documents for the purpose of determining the amount, form and source of payments made to counsel in connection with their representation of the defendants. However, absent any showing that the defendants sought advice for the purpose of engaging in continuing criminal activity, the Government should not be permitted to compel counsel to reveal the substance of communications with their clients relating to non-fee matters that may qualify for protection under the attorney-client privilege.

Accordingly, it is hereby ORDERED that:

1. The Government's application for the issuance of subpoenas directing Lawrence J. Semenza, Kenneth O'Donnell, Jack Hill, F. Brian Adae, Anthony Del-Guidice, Stephen J. Finta, Richard C. Bicki, Charles J. Reilly, Robert Luskin, and Richard Mazur to appear and be deposed for the purpose of determining the amounts, form and sources of any payments made or to be made to them in connection with their representation of the defendants and for the purpose of eliciting any other relevant information not privileged is GRANTED.

2. The Government's application for the issuance of subpoenas directing the production of documents relating to the amounts, form, and/or sources of payments made to defendants' counsel in connection with their representation of defendants is GRANTED; provided, however, that any portions of such documents reflecting substantive communications regarding matters for which legal advice was sought may be redacted on the condition that counsel identify the portions redacted and the reason or reasons for the redaction.

Any disputes with respect to whether information not provided is privileged may be resolved by further motion and, to the extent applicable, the submission of supporting documents and/or affidavits for *in camera* inspection by the Court.

IT IS SO ORDERED.