Bethanie J. CURATO et al.

v.

Margaret A. BRAIN, Individually and
Margaret A. Brain, Executrix of
the Estate of John I. Brain.

No. 97–266–Appeal.

Supreme Court of Rhode Island.

July 22, 1998.

Peter Olsen, Wickford, for plaintiff.

James E. Purcell, Providence, for defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on the appeal of the plaintiff, Cathie L. Wilson (Cathie).[1] Cathie and her sister, Bethanie J. Curato (Bethanie) (collectively plaintiffs or sisters), instituted suit, seeking declaratory and injunctive relief with respect to their purported interest in certain real estate previously owned by their late father and currently owned by the defendant, Margaret A. Brain (Margaret). Following a nonjury trial, a Superior Court justice denied the requested relief, finding that the plaintiffs had failed to satisfy their burden of proof. For the reasons set forth below, we affirm the decision of the trial justice and deny Cathie's appeal. The facts insofar as are pertinent are as follows.

John I. Brain (John) and Barbara Brain (Barbara) were married in 1965.[2] Their daughter Bethanie was born in 1967 and their daughter Cathie was born in 1968. In

1971, John's parents gave the couple a parcel of land on Beach Avenue on Block Island upon which they subsequently built a house. It is this parcel of land that is the subject of the instant dispute.

Unfortunately the marriage deteriorated, and the couple eventually separated. On February 12, 1974, the couple entered into an informal property-settlement agreement that addressed various issues, including the custody of the children, support payments, and the division of property. With the assistance of an attorney who drafted the finalized version, the couple executed a modified version of the earlier agreement on February 23, 1974. The portion relative to these proceedings provides:

"The wife agrees to convey forthwith, by Quit Claim Deed, all of her right, title and interest in and to the real estate presently jointly owned by the parties and located at Beach Avenue, Block Island, Town of New Shoreham, Rhode Island, to the husband with the understanding that should said real estate be sold or otherwise transferred at a later date, the minor children of the parties will each receive or retain one-fourth interest in said property. The wife further agrees to execute any and all documents necessary for the purpose of effectuating said transfer to the husband."

Accordingly, Barbara executed a quitclaim deed on February 22, 1974, and conveyed all her interest in the property to John. The quitclaim deed does not refer to the property-settlement agreement, nor was the agreement, or any other document reflective of its terms, ever recorded in the land evidence records of the town of New Shoreham. On March 5, 1974, the couple obtained a Haitian divorce decree finalizing the dissolution of the marriage. The February 23, 1974 property-settlement agreement was incorporated into but not merged with the divorce decree.

On April 11, 1976, John married Margaret and thereafter lived continuously with her on the Beach Avenue property. In 1980 John conveyed the Beach Avenue property by

---

1. Cathie L. Wilson and her sister, Bethanie J. Curato, were the plaintiffs in the Superior Court action. Only Cathie has chosen to pursue her right to appeal.

2. Barbara Brain has since remarried and is now named Barbara Battey.

warranty deed to himself and Margaret as tenants by the entirety with right of survivorship. Thereafter, and throughout the course of the marriage, Margaret contributed to the maintenance and upkeep of the property, including the payment of taxes, the mortgage, and repair costs.

In October of 1991 John passed away, and his estate was probated. After John's death Barbara disclosed the existence of the property-settlement agreement to Bethanie, who in turn informed Cathie. Barbara further communicated that pursuant to its terms, each child was to receive a one-fourth interest in the property upon its transfer. Prior to this conversation Cathie and Bethanie had no knowledge of their purported interest in the Beach Avenue property. Barbara later stated that she had not previously mentioned the agreement to her daughters or to anyone else because she thought that there was no need and that John "would do the right thing."

In March of 1992 Cathie and Bethanie filed this action in Superior Court, seeking a declaratory judgment that they each possess a one-fourth interest in the property and an injunction preventing Margaret from interfering with their use and enjoyment of the property. The sisters alleged that the terms of the property-settlement agreement created either an express or a resulting trust in their favor. The sisters further alleged that the transfer of property to Margaret was in violation of John's fiduciary duty to his daughters and therefore required the imposition of a constructive trust to prevent unjust enrichment. Margaret denied any prior knowledge of the February 23, 1974 agreement and maintained that the sisters had no enforceable interest in the property. Nevertheless Margaret filed a counterclaim, seeking recovery of the moneys she expended on the maintenance and the improvement of the property should the court rule in the sisters' favor.

Prior to trial Bethanie and Cathie filed a motion to compel the deposition testimony of Robert H. Breslin, Jr. (Breslin), the attorney for John and Margaret who drafted their wills in 1987. Specifically the sisters sought to question Breslin about any communication

he may have had with John or Margaret concerning the 1980 warranty deed in an attempt to demonstrate fraudulent conduct on their part. After Margaret invoked the attorney-client privilege on her own behalf and on behalf of John's estate in her capacity as executrix of her late husband's estate, Breslin declined to answer questions concerning any communication that he may have shared with his clients. The sisters argued, however, that John's transfer of the Beach Avenue property to Margaret and himself as tenants by the entirety in 1980, which violated the terms of the settlement agreement, constituted a fraudulent act and that, therefore, the crime-fraud exception to the privilege applied prohibiting the invocation of the attorney-client privilege. A justice of the Superior Court disagreed and denied the motion to compel Breslin's testimony.

Thereafter the trial commenced before a single justice of the Superior Court sitting without a jury. In a bench decision the trial justice rejected all claims submitted by plaintiffs and found that the property-settlement agreement constituted "at most" a third-party beneficiary contract to be performed by John at a future date. The trial justice further held that "at most" the sisters each possessed an unvested and unenforceable contract right to one-fourth of the property. She found there was no evidence that John and Barbara ever declared a trust or that they intended to create one. Rather the trial justice found that the agreement merely memorialized the understanding between John and Barbara, and "at most," contractual obligations were undertaken by John. Furthermore, because there was no evidence demonstrating that Margaret had in any way defrauded Bethanie or Cathie, the trial justice determined that a constructive trust was not appropriate. As a result, pursuant to the 1974 quitclaim deed, John owned 100–percent of the property, subject "at most" to his contractual obligation to give one-fourth interest in the property to each daughter upon transfer of the property, and thus had the power to create a valid tenancy by the entirety of the whole property, which he did by virtue of the 1980 conveyance to Margaret and himself. This appeal ensued.

On appeal Cathie maintains that the trial justice erred in (1) rejecting her request for the imposition of a constructive trust because at the time they entered into the settlement agreement, her parents, John and Barbara, had a fiduciary relationship that was subsequently breached by John's transfer of the property to Margaret, (2) denying her motion to compel the testimony of John and Margaret's attorney, (3) characterizing the agreement as a third-party beneficiary contract, and (4) finding that John had an unencumbered ownership interest in the real estate.

"In accordance with our well-settled standard of review, '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *L.A. Ray Realty v. Town Council of Cumberland,* 698 A.2d 202, 207 (R.I.1997) (quoting *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995)). After a review of the record and on the basis of the aforementioned standard of review, we are unable to discern any error on the part of the trial justice and therefore affirm her decision in its entirety.

Three of the four points of error alleged by Cathie concern the trial justice's characterization of the property-settlement agreement as a third-party beneficiary contract and her refusal to impose a trust on the property. First, Cathie maintains that the agreement reflects a promise made between two parties who stood in a fiduciary relationship to each other and that the breach of that promise constituted a breach of a fiduciary relationship necessitating the imposition of a constructive trust. We disagree.

■ "[A] constructive trust is a relationship imposed by operation of law as a remedy to redress a wrong or prevent an unjust enrichment." *Simpson v. Dailey,* 496 A.2d 126, 128 (R.I.1985). The party or parties requesting the imposition of a constructive trust must establish by clear and convincing evidence the existence of fraud or breach of a fiduciary duty; absent such proof there can be no constructive trust. *See Clark v. Bowler,* 623 A.2d 27, 29 (R.I.1993). With respect to real property there must be some element of fraudulent conduct by the person in possession of the property in procuring the conveyance in order for a constructive trust to arise. *See Lawrence v. Andrews,* 84 R.I. 133, 139, 122 A.2d 132, 135 (1956); *see also J.K. Social Club v. J.K. Realty Corp.,* 448 A.2d 130, 134 (R.I.1982) (constructive trust operates in presence of fraud or breach of a fiduciary relationship).

■ In this case the record is simply devoid of any evidence that would necessitate the imposition of a constructive trust. As the trial justice observed, there was absolutely no evidence that would indicate that either John or Barbara intended to create a trust. There was no clear declaration of a trust, nor does the settlement agreement evince a design that John merely hold legal title to the property. On the contrary, we believe that the evidence overwhelmingly supports the conclusion that a third-party beneficiary contract was created. Barbara quitclaimed her interest in the property to John in return for his promise that he would provide for the minor children should he sell or transfer the property.

■ Furthermore, the evidence fails to reflect any fraud on the part of Margaret in obtaining title to the property. Neither is there anything that would indicate that plaintiffs and Margaret have a fiduciary relationship. When John deeded the property to himself and Margaret as tenants by the entirety, he had full ownership rights in the property as a result of the quitclaim deed previously executed by Barbara. The quitclaim deed does not refer to the property-settlement agreement, nor was the agreement, or any other document reflective of its terms, ever recorded. By all appearances John was free to convey the property to whomever he wished and in any manner he chose. Additionally no evidence was introduced that would indicate that Margaret had any notice of the agreement or its terms. In the context of this set of facts, we agree with the conclusion of the trial justice and hold that the imposition of a constructive trust would be inappropriate.

Cathie maintains, however, that the characterization of a property-settlement agreement that provides support for a divorcing couple's children as a third-party beneficiary contract is "inconsistent with the public policy and principles underpinning domestic law and would mean that minor children have no rights independent of their parents." Once again we must disagree.

■ As the trial justice stated, there is no question that an intended third-party beneficiary, in this case the children, may sue on a contract made for his or her benefit. *See Davis v. New England Pest Control Co.,* 576 A.2d 1240, 1242 (R.I.1990); *Elliott Leases Cars, Inc. v. Quigley,* 118 R.I. 321, 330, 373 A.2d 810, 814 (1977). This right of enforcement, however, is contingent upon the third party's assenting to or ratifying the contract. *See Blake v. Atlantic National Bank,* 33 R.I. 464, 467–68, 82 A. 225, 226 (1912).

■ In this case Cathie did have rights pursuant to the property-settlement agreement that at one time may have been actionable. However, these rights remained unvested and therefore unenforceable until Cathie either assented to them or in some other way ratified the contract. This activity occurred at the earliest in 1991, after John died and when Cathie first learned of the agreement. Unfortunately by this time her rights had been extinguished.

The agreement was breached, if at all, by virtue of the 1980 conveyance from John to himself and Margaret as tenants by the entirety with right of survivorship. This deed was in the land evidence records, thus giving Barbara constructive notice of the breach. As of the time of the breach Barbara could have, and in hindsight should have, taken steps to enforce the terms of the agreement. She did not. She also failed to inform her daughters of the agreement prior to John's death, thereby depriving them of their right to assent to and enforce the contract. Barbara's testimony that she expected John to "do the right thing" is of no assistance to Cathie. As a result the statute of limitations on any potential cause of action resulting from the breach expired ten years after the 1980 conveyance of the property, and the rights that were intended to inure to Cathie

pursuant to the agreement were extinguished before they could vest.

Therefore, we concur with the trial justice and conclude that the agreement entered into between John and Barbara in 1974 merely created third-party beneficiary rights in their children. Cathie's rights pursuant to the agreement did not vest and were unenforceable until she assented to or ratified the contract. These rights were extinguished before they vested, however, by virtue of the 1980 transfer of the property by John, and Barbara's subsequent inaction relative thereto. Furthermore Cathie failed to present sufficient evidence establishing the existence of any fiduciary relationship between herself and Margaret and was therefore not entitled to the imposition of a constructive trust. Accordingly at the time of the 1980 conveyance John had full ownership of the property and could create a valid tenancy by the entirety in himself and Margaret such that upon his death, Margaret became the sole owner of the property. *See Cull v. Vadnais,* 122 R.I. 249, 255, 406 A.2d 1241, 1244 (1979) (valid tenancy by entirety requires the four unities of time, title, interest, and possession, as well as requirement that at time of the conveyance the grantees are validly married).

■ The final issue on appeal concerns the denial of the sister's motion to compel the deposition testimony of Breslin. Cathie asserts that Margaret's denial of any knowledge of the agreement "strains credulity" and that in order to prove complicity on Margaret's part, she should have been permitted to examine Breslin. Cathie maintains that the attorney-client privilege would not have been implicated because if Margaret took the property with knowledge of the property-settlement agreement, the transfer would constitute a fraudulent act and the privilege "does not operate in the presence of fraud." After a review of the record and relevant case law, we must dismiss this alleged point of error as well.

It is undisputed that Breslin did not participate in the drafting of the 1980 deed in which John created the tenancy by the entirety—the alleged fraudulent act. Cathie maintains, however, that Breslin may have

communicated with John and Margaret while drafting the couple's wills in 1987 concerning the 1980 warranty deed and that this communication would prove Margaret's complicity in the breach of the 1974 property settlement. Even were we to accept Cathie's allegations as true and conclude that (1) Margaret was aware of the property-settlement agreement at the time of the transfer, (2) this knowledge constituted fraud, and (3) she shared this knowledge with Breslin in conjunction with the preparation of her will, this type of inquiry is simply not permissible.

 " 'The general rule is that communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure.' " *Callahan v. Nystedt,* 641 A.2d 58, 61 (R.I.1994). The attorney-client privilege generally will survive the death of the client except in very limited circumstances where the information sought concerns conversations that relate to the drafting of a will. *See Swidler & Berlin v. United States,* — U.S —, — — —, 118 S.Ct. 2081, 2084–86, 141 L.Ed.2d 379 (1998). Even then, these communications are discoverable only in the context of a will contest and to the extent that they evince the testator's intentions. *See, e.g. Denver National Bank v. McLagan,* 133 Colo. 487, 298 P.2d 386, 388 (1956).

In this case, even though the communications between Breslin and John and Margaret were for the purpose of seeking professional advice in planning their estates and drafting their wills, Cathie is not seeking this testimony for the purpose of challenging the validity of the will. Rather she is seeking this disclosure for the purpose of challenging the conveyance of the property. Accordingly, these communications are privileged and are not subject to disclosure.

Furthermore, while we acknowledge that the privilege will not operate if the communication is " 'for the purpose of committing a crime,' " *Callahan,* 641 A.2d at 61, we note that this exception to the privilege does not include conversations relating to instances of prior criminal conduct but rather pertains only to those communications that concern the furtherance of present continuing illegality or future criminal or fraudulent activity. *See United States v. Saccoccia,* 898 F.Supp. 53, 57 (D.R.I.1995); *In re Grand Jury Proceedings (Doe),* 602 F.Supp. 603, 607–08 (D.R.I.1985). Any reference to the 1974 property-settlement agreement that may have occurred during these conversations, if it happened at all, concerned past conduct and is therefore protected by the attorney-client privilege and not subject to disclosure.

For the foregoing reasons the plaintiff's appeal is denied, and the judgment appealed from is affirmed. The papers in this case may be remanded to the Superior Court.